**Mark GAY, Plaintiff-Appellant,**

**v.**

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant-Appellee.**

**No. 92–7037.**

United States Court of Appeals, Tenth Circuit.

Feb. 23, 1993.

Paul F. McTighe, Jr., Tulsa, OK, for plaintiff-appellant.

John W. Raley, Jr., U.S. Atty., E.D. Oklahoma, Gayla Fuller, Chief Counsel, Region VI, and Rodney A. Johnson, Asst. Regional Counsel, Office of the Gen. Counsel, U.S. Dept. of Health and Human Services, Dallas, TX, for defendant-appellee.

Before ANDERSON and EBEL, Circuit Judges, and BRIMMER,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R.

---

* Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation.

34.1.9. The case is therefore ordered submitted without oral argument.

■ Plaintiff Mark A. Gay appeals from a district court judgment affirming the Secretary of Health and Human Services' denial of his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The district court adopted the magistrate judge's recommendation, which explains in detail its determination that substantial evidence supports the factual findings underlying the Secretary's decision to deny benefits for lack of a compensable disability. On appeal, we likewise review the record "to determine whether the findings are supported by substantial evidence and whether the Secretary applied correct legal standards." *Pacheco v. Sullivan,* 931 F.2d 695, 696 (10th Cir.1991). Concluding that the Secretary's decision is both free of legal error and supported by "such evidence that a reasonable mind might accept as adequate," *id.* at 697, we affirm the denial of benefits.

Plaintiff has not been gainfully employed since October 20, 1987, when he suffered a closed head injury in a motorcycle accident. He claims a disability from that date, alleging a subsequent history of seizures, headaches, inability to concentrate, memory problems, and depression. The details of these complaints, as well as the relevant medical evidence, are thoroughly recounted in the decision of the administrative law judge (ALJ), and discussed further in the recommendation of the magistrate judge. We shall therefore proceed directly to the legal analysis, referring to particular facts and items of evidence where pertinent.

The Secretary has established a five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988) (describing steps in detail). Employing this procedure, the ALJ found that plaintiff (1) was not performing substantial gainful activity; (2) had a severe impairment; (3) did not, however, have a listed impairment; and (4) was unable to perform his past relevant work. These findings are not at issue. Rather, the focus of this appeal is on step five, at which the ALJ found that plaintiff retained the residual functional capacity to perform work at all exertional levels, but his nonexertional impairments precluded him from engaging in work above ground level, in close proximity to dangerous equipment, or involving more than medium stress. Based on expert vocational testimony, the ALJ then concluded the Secretary had carried the burden of demonstrating that, in light of these exertional and nonexertional factors, along with plaintiff's age, education, and work experience, plaintiff could still qualify for jobs existing in significant numbers in the national economy and, therefore, did not have a compensable disability.

### Sufficiency of the evidence

■ In support of his general challenge to the sufficiency of the evidence underlying this determination of nondisability, plaintiff argues the ALJ failed properly to consider two specific points regarding his nonexertional impairments.[1] The first concerns the side effects of his nightly medication, *see* Aplt. Brief at 10, which plaintiff testified makes him "drowsy and slow to get around" for "an hour or so" upon waking. R.Vol. II at 54. Actually, the ALJ expressly addressed this testimony, noting plaintiff's demonstrated ability to attend school on a full-time basis despite this inconvenience, and concluding that "the evidence in this record is persuasive that drowsiness for 1 hour when claimant first gets up in the morning would not affect his ability to engage in basic work-related activities." R.Vol. II at 14. Plaintiff also contends the ALJ failed to consider the fact that he lacks the energy to work full-time because of his depression, *see* Aplt. Brief at 10, but this point is likewise belied by the

---

1. Plaintiff also contends the ALJ erred by not considering the combined effect of his several alleged impairments, "in that he failed to ask a hypothetical question to the vocational expert witness that involved all said impairments."

Aplt. Brief at 12. This contention is addressed later, in connection with plaintiff's direct challenge to the expert's testimony on this very same ground (among others).

text of the ALJ's decision. Again, plaintiff's cited testimony, that he "[j]ust [does] not hav[e] the energy or the get up and go to do anything," R.Vol. II at 55, was considered in conjunction with a great deal of other evidence, but was not deemed substantial enough to affect the ALJ's determination. *See* R.Vol. II at 10–11, 16.

We therefore hold that the specifically challenged findings of the ALJ have sufficient support in the record. We reach the same conclusion with respect to the rest of the ALJ's evidentiary analysis. The ALJ's decision reflects a full and fair review of the entire factual record relating to plaintiff's alleged impairments. It also includes a reasoned explanation for discounting, to some extent, plaintiff's credibility, to which we owe considerable deference, *see Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir.1991). Given the modicum of corroborative evidence for plaintiff's primarily subjective complaints, we will not disturb the ALJ's considered determination that these restrict plaintiff no more than to the extent the ALJ duly accounted for at step five. *See generally Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992) (if ALJ properly considers all evidence relating to impairments, we will not substitute our judgment regarding weight of evidence).

### *School attendance and "sit and squirm". evidence*

▪ In addition to his contentions regarding the lack of evidence supporting the ALJ's determination, plaintiff also complains of the ALJ's improper reliance on two items of evidence. First, citing *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir.1979) (ability to attend school does not necessarily establish claimant can engage in substantial gainful activity), plaintiff argues that the ALJ and magistrate judge "erroneously held that the [plaintiff's] attendance in classes at Oklahoma State Technical College ... equated with the ability to work." Aplt. Brief at 13. Actually, the ALJ and magistrate judge held only that plaintiff's performance in school specifically contradicted representations that

his psychological problems prevented the pursuit of vocational rehabilitation/education, *see* R.Vol. II at 11, and, more generally, provided some support for the ultimate determination of nondisability, *see, e.g., id.* at 14, 16; R.Vol. I at 9. This was entirely proper under *Markham*, which explains that, while not conclusive, "such activities [as school attendance] may be considered by the Secretary, along with medical testimony, in determining the right of a claimant to disability payments under the [Social Security] Act." *Markham*, 601 F.2d at 534.

Next, plaintiff quotes the magistrate judge's routine acknowledgment that the ALJ "had the advantage of personal observation of the Plaintiff during the time he appeared before him," and contends "[t]he magistrate judge erred in [thus] approving the use of the 'sit and squirm' test." Aplt. Brief at 14. This argument shares the same basic flaw identified above in connection with the school attendance issue, i.e., plaintiff overstates the significance placed on some cumulative or collateral matter in order to invoke an otherwise inapplicable rule prohibiting conclusive reliance on such evidence. In the decision cited by plaintiff, *Teter v. Heckler*, 775 F.2d 1104 (10th Cir. 1985), this court held that where uncontroverted evidence corroborates the claimant's assertions of disabling pain, the ALJ "may not reject [those] assertions on the basis of demeanor alone." *Id.* at 1106. It is frivolous to suggest that this principle has any application here. Plaintiff's evidence of disability can hardly be described as uncontroverted, nor can the ALJ's extensive and thoughtful analysis—or the magistrate judge's review thereof—be remotely likened to the kind of superficial, demeanor-driven judgment precluded by the rule announced in *Teter*.

### *Vocational expert testimony*

▪ Plaintiff raises two objections to the expert vocational testimony relied upon by the ALJ for his determination that a significant number of jobs matching plaintiff's particular profile exist in the regional and national economies. First, plaintiff insists

it was improper for the expert to use *Employment Statistics Quarterly*, a journal published by the United States Publishing Company, as a source for her testimony regarding job availability. Specifically, plaintiff argues that because this publication is not listed in 20 C.F.R. § 404.1566(d) (administrative notice of published job data), the expert's testimony should be stricken. In our view, plaintiff's position, which is offered without any supporting authority, misconceives both the effect of § 404.1566(d) and its relationship to the adjacent § 404.1566(e), which deals directly with the use of vocational experts.

Section 404.1566(d) obviates the need for formal admission of reliable job data, through expert testimony or otherwise, where it is "available from various governmental *or other publications*." (Emphasis added.) Nothing in this language supports plaintiff's position precluding administrative notice of materials that are either published by nongovernmental entities or disseminated by subscription. Nor does the absence of a specific reference to the particular materials involved here undercut their use, as the few publications that are explicitly listed in the regulation are introduced not by language of limitation and exclusion, but by the open-ended phrase, "*[f]or example*, we take notice of—...." Finally, we note that the vocational expert in this case testified that the statistical data included in the quarterly journal was, in any event, compiled from government sources listed in § 404.1566(d). *See* R.Vol. II at 63.

■ More fundamentally, however, plaintiff has advanced no authority or reasoned explanation for his critical assumption that the range of professional sources relied upon by a vocational expert testifying pursuant to § 404.1566(e) is constrained by any limitations imposed on the scope of permissible administrative notice under § 404.1566(d). The overall structure and text of the regulation indicate, rather, that these two distinct subsections offer alternative avenues of proof, a construction that comports with existing case law. *See, e.g., Warmoth v. Bowen,* 798 F.2d 1109, 1110 (7th Cir.1986) (where disability determination is made at step five, "resolution of the issue generally will require consultation of occupational reference materials (*see* 20 C.F.R. § 404.1566(d) (1985)) or the services of an expert"); *see also Decker v. Harris,* 647 F.2d 291, 298 (2d Cir.1981) (although vocational expert testimony is preferred, administrative notice of published data is permissible alternative). Indeed, what would be the point of vocational testimony (or expert testimony in general) if it could not reach beyond matters already established through administrative (or judicial) notice? Furthermore, the policy reasons mandating prudential limitations on the range of materials that may be noticed directly, without any adversarial scrutiny, do not apply to sources of expert testimony that may be tested by cross-examination.[2]

■ Plaintiff's second objection to the vocational expert's testimony invokes the rule that "'[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir.1990)). Without identifying precisely how this rule was violated, plaintiff asserts in conclusory fashion that we should reject the expert's unfavorable

2. We are not persuaded by plaintiff's contention that counsel could not adequately cross-examine the vocational expert because her (published) data source was available only by subscription. Counsel could have probed the witness about the source's reliability and acceptance in the profession, but he did not do so, and now our assessment of such matters is effectively foreclosed. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1330–31 and n. 13 (10th Cir.1992). Furthermore, nothing prevented counsel from challenging the expert's figures and conclusions with data available from other, administratively noticed publications, which is a recognized means of discrediting expert vocational testimony. *See, e.g., Tom v. Heckler,* 779 F.2d 1250, 1255–56 (7th Cir.1985); *Mimms v. Heckler,* 750 F.2d 180, 186 (2d Cir.1984).

testimony regarding available jobs elicited and relied upon by the ALJ, and accept instead the expert's more favorable response to a hypothetical question posed by counsel.

■ We have already affirmed the ALJ's findings regarding the limited nature and effect of plaintiff's impairments. Because these findings are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, *see* R.Vol. II at 58–62, the expert's testimony provided a proper basis for adverse determination of this case.[3] In contrast, plaintiff's counsel was able to prompt advantageous testimony only by requiring the expert to assume the unestablished, conclusive fact that plaintiff's condition made him "so sleepy he couldn't do his job." *Id.* at 62. Any (essentially tautological) opinions premised on such an assumption clearly would not bind the ALJ. *See, e.g., Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990).

For the reasons expressed above, we AFFIRM the judgment of the United States District Court for the Eastern District of Oklahoma affirming the Secretary's denial of benefits.

---

**3.** We recognize that the ALJ did not specifically refer the expert to the work stress limitation he ultimately found on the basis of plaintiff's depression. The ALJ did, however, inquire about the job consequences of a "fairly significant depression" that might affect the plaintiff "personality wise." R.Vol. II at 61. The fact that the expert had just heard plaintiff specifically relate his depression to difficulty in completing (school) work under the pressure of multiple assignments, *id.* at 57–58, suggests that the matter of a depression-based limitation regarding work pressure was raised, albeit somewhat obliquely, with the expert, who indicated that a significantly large category of jobs would still be open to plaintiff, *see id.* at 61–62. Accordingly, the ALJ's failure to refer expressly to this particular detail in his questioning of the expert, if error, was minor enough not to undermine confidence in the determination of this case. *Cf. Diaz v. Secretary of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir.1990).