**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 5 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

WILLIAM J. PENNINGTON,

Plaintiff-Appellant,

v.

SHIRLEY S. CHATER,
Commissioner, Social Security
Administration,

Defendant-Appellee.

No. 96-5177
(D.C. No. 93-CV-1135-J)
(N.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before BRORBY and KELLY, Circuit Judges, and CAUTHRON,[**] District Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Robin J. Cauthron, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

Claimant William J. Pennington appeals from an order of the magistrate judge, sitting for the district court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), affirming the denial of his application for social security disability benefits. Claimant alleges disability due to the pain and debilitating aftereffects of ocular migraine headaches. The administrative law judge (ALJ) found claimant's testimony only partially credible and determined that he was not disabled at step four of the five-step sequential evaluation process. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). The only issue on appeal is whether the ALJ's credibility determination is supported by substantial evidence. We have jurisdiction under 28 U.S.C. § 636(c)(3) and 28 U.S.C. § 1291 and, for the reasons discussed below, we reverse and remand for an immediate award of benefits.

Claimant was born in 1943 and holds two associate's degrees, one in business administration and one in middle management. Prior to 1991, when he claims to have become disabled, he had worked continuously since at least 1975, in either data processing, computer programming, or telecommunications. He was employed with Amoco, his last employer, for a period of approximately eleven years and, in his last position there, as a staff telecommunications analyst responsible for the southeastern United States, he traveled 90-95 percent of the time, worked 70-80 hours per week, and made approximately $50,000 a year.

Although there is some confusion in the record as to the precise date in 1991 when he last worked, the evidence is uncontroverted that he did not quit, but was "put . . . out on disability." II Appellant's App. at 53. Claimant explained that "[t]hey didn't want [him] driving . . . [or] travelling any more," which "was part of [his then-current] job," id. at 53, and that the in-house doctor discussed with him the possibility of a transfer to an accounting function or something similar but thought that the eye strain would probably "set [the headaches] off," id. at 60. At the time of his administrative hearing, he was receiving long term disability in the amount of $2,670 a month.

Claimant filed his application for social security disability benefits in 1992, alleging disability from March 1991 due to ocular migraines. He testified at his administrative hearing that his headaches started "[n]ot too long after" an accident in 1987 involving a battery explosion which resulted in the loss of his left eye, id. at 53, and have gradually worsened since then. He further testified that he suffered migraine headaches four to seven times a week, each lasting from three to five hours and accompanied by five to twenty minutes of blindness in his right eye and by debilitating aftereffects lasting up to 24 hours. See id. at 52. Among the aftereffects claimant described were tenderness of the head, dizziness, nausea, and grogginess. See id. He also testified that although the doctors "can't

nail down exactly what's causing [the headaches]," eye strain and reading a computer screen "seem[] to be" factors. Id. at 59.

Claimant characterized approximately 15 to 20 percent of his time as "good days," when he is "not having a headache or any side effects" and "can do a few things, go to the laundry, [and] go to the grocery store." Id. at 50. He described 20 percent of his time as "bad days," when he has "extreme headaches" and "stay[s] in bed with a pillow over [his] head, the drapes closed," when he "can't stand light, can't stand noise, [and] cannot function at all." Id. The rest of his time he characterized as "a transition period," when he is "either going into . . . [or] coming out of [a] headache[]" and suffering from the aftereffects of the headache and his headache medication. Id. During these transition periods, claimant testified that he is in a "recuperation mode"and can "fend for [him]self, . . . fix [him]self a meal, maybe do a load of laundry, [and] take care of the dogs," but "spend[s] most of the day on the couch" and "can't function." Id. at 50-51.

Rejecting much of this testimony, the ALJ determined that claimant had the residual functional capacity to perform light work limited only by monocular vision, lack of depth perception, and occasional blind episodes, and the resulting inability to climb, balance, or work around heights or moving machinery. Although he found that "claimant has occasional bouts of headache pain," id. at

-4-

19, and credited claimant's complaints of episodes of accompanying blindness, the ALJ found that claimant's testimony "exhibit[ed] embellishment, exaggeration, and a strong secondary gain motive" and found it credible "only to the extent that it is reconciled with the objective medical evidence and the claimant's [residual functional capacity]," id. at 24. Accordingly, the ALJ determined, at step four of the sequential evaluation process, that claimant could return to his past relevant work and thus was not disabled.

On appeal, claimant challenges the ALJ's credibility determination. "[C]redibility determinations are the province of the ALJ, 'the individual optimally positioned to observe and assess witness credibility.'" Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996) (quoting Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)). Accordingly, this court ordinarily defers to the ALJ on that issue. See Casias, 933 F.2d at 801. However, "deference is not an absolute rule." Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993). To be sustained, credibility determinations must be supported by substantial evidence. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Soliz v. Chater, 82 F.3d 373, 375 (10th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (further quotation omitted)).

Having carefully reviewed the record, we do not find substantial evidentiary support for the ALJ's credibility determination in this case. Without much elaboration, the ALJ found that claimant's testimony was "not always consistent with the documentary evidence or with itself." II Appellant's App. at 21. The ALJ cites Dr. Dawson's July 1992 treatment notes purportedly to the effect that "claimant was doing well with his migraine headaches." Id. The July 1992 notes make no reference to claimant's headaches, however, but appear to relate only to claimant's status following an endoscopy which found claimant to have a hiatal hernia. See id. at 149. More importantly, a review of Dr. Dawson's records in their entirety reveal that since at least early 1990, claimant has consistently sought relief from headaches and received medication for that purpose. See id. at 160 (3/6/90), 159 (5/22/90), 158 (5/29/90), 157 (1/14/91 & 1/31/91), 156 (2/26/91 & 5/3/91), 155 (9/4/91), 154 (12/18/91), 153 (4/1/92), 150 (6/18/92), 148 (9/17/92), 203 (2/1/93). Among the medications he has consistently received is Tylox, a semisynthetic narcotic analgesic, indicated for the relief of moderate to moderately severe pain. See Physicians' Desk Reference 1593-94 (51st ed. 1997).

In May of 1990, Dr. Dawson diagnosed claimant as suffering from "[p]robable ocular migraines, possibly induced by the trauma of the battery accident to his left eye." II Appellant's App. at 159; see also id. at 124 (Dr.

-6-

Dawson's hospital discharge report noting claimant's "[c]hronic headaches of a vascular migraine type"). Neither of the other doctors who examined claimant during the relevant period questioned the existence of his headaches, see id. at 170 (record of 2/1/91 exam by in-house physician of claimant's former employer indicating diagnosis of "MIGRAINE NEC" and "VISUAL LOSS NOS"), 204 (consulting physician's report referencing claimant's "history of severe migraines with loss of vision"), and there is other medical evidence in the record supportive of claimant's testimony, see id. at 164 (2/26/91 report from Dr. Dawson indicating that claimant has an ocular migraine and cannot return to work until 2/28/91), 176 (5/22/90 report by Dr. Dawson indicating claimant "[r]estricted from driving until migraines under control), 165 (in-house physician's recommendation that claimant not drive company vehicles, owned or rented, and that "he be put in a position where he does not have to drive or do a great deal of traveling"), 148 (notation in Dr. Dawson's treatment notes of 9/17/92 reiterating that "Pt. should not be driving"). Although the record includes no medical opinion of disability, the medical evidence is certainly not inconsistent with claimant's testimony of severe migraine headaches with debilitating aftereffects.

The ALJ notes that "[t]he only restrictions placed upon the claimant by his treating or examining physicians, in the past, have been those of operation of machinery, such as cars, and limitations placed upon his ability to travel." Id.

at 21.  Given claimant's uncontroverted but unexplored testimony that he left Amoco because "[t]hey put me out on disability," id. at 53, it is unclear whether this is correct.  Furthermore, although it is appropriate for the ALJ to consider the extent to which the medical evidence corroborates the existence of a claimed impairment, its severity, and the accompanying functional limitations, see Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987), we note that the documented restriction corroborates claimant's testimony, and the absence of other medically-imposed restrictions is not necessarily inconsistent with the claimed impairment in this case.

The ALJ further states, again without elaboration, that "[t]he medical findings are not consistent with a significant pain causing etiology." II Appellant's App. at 22.  The statement indicates that the ALJ may have relied on the lack of conclusive laboratory-type findings to confirm claimant's diagnosis and/or symptomatology.  We are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the failure to produce such test results is surely an improper basis for discrediting a claimant's uncontroverted testimony.  See Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739, 743-44 (10th Cir. 1993) (holding

-8-

that the ALJ improperly impeached a claimant's unrebutted testimony because of the lack of a conclusive "dipstick" laboratory test for chronic fatigue syndrome).[1]

The ALJ also relied on claimant's reported daily activities to discredit his testimony, finding that they contradicted his claims concerning disabling pain and significant functional limitations. In so concluding, the ALJ stated that "[t]he claimant leads a rather active lifestyle. He fishes, he camps, and he drives when he wants to." II Appellant's App. at 22. We do not consider this a fair characterization of the record. At his administrative hearing, claimant testified to a fairly sedentary and circumscribed lifestyle. See, e.g., id. at 56-57 (claimant's testimony concerning an average day). There is nothing in the record to indicate that he drives "when he wants to." Id. at 22. On the contrary, claimant testified that he drives "pretty much" "only on good days" "[u]nless I'm awfully desperate for a cigarette, and then I don't go far away. . . . I feel like I'm totally drunk when I'm out there in a transitional period, and if I'm having a headache there's no

---

[1]    Although conceding that credibility is the crucial issue in this case, see Appellee's Br. at 17, the Commissioner makes a similar argument in her brief, contending that claimant has failed to establish a "medically determinable impairment" because of the absence of "objective medical findings," id. at 19. However, just as claimant's testimony cannot be discredited because of the absence of a conclusive laboratory-type test, his treating physician's unchallenged diagnosis cannot be ignored for that reason. See Sisco, 10 F.3d at 743-44 (ALJ erred in discrediting treating physician's unchallenged diagnosis because of lack of "dipstick" laboratory test for chronic fatigue syndrome where no such test existed).

way." Id. at 58; see also id. at 176 (5/22/90 report of Dr. Dawson that claimant "[r]estricted from driving until migraines under control), 165 (company doctor's recommendation on 2/6/91 that claimant not drive company vehicles). There is some indication in the record that claimant still fishes, see id. at 110, 113, and one unexplored reference in Dr. Dawson's treatment notes to a two-week camping trip, see id. at 150, which claimant apparently took over a year after he claims to have become disabled. We do not believe that claimant's apparent participation in these activities, as established on this record, are sufficient in and of themselves to warrant discrediting claimant's testimony. The ALJ focused in particular on claimant's fishing, noting that "[f]ishing would be an extremely hazardous occupation if the claimant were actually suffering from loss of [vision] four to seven times a week." II Appellant's App. at 22. While the ALJ's observation might be accurate under certain circumstances, the evidence seems to indicate that claimant does not fish often, id. at 113 ("1 day every other month"), that he goes only when he expects a "good day," id. at 59, and that he does not go alone, id. at 205.

The ALJ also appears to have relied heavily on the fact that claimant lives alone and, for the most part, takes care of his own personal and household needs. Claimant's testimony indicates, however, that his particular activities in this regard vary depending on whether he is having a good day, a bad day, or is in a

so-called transition period. See id. at 57 (able to make his own breakfast and lunch during transition periods, but not on a bad day), 58 (drives "pretty much" "only on good days" and "weed eat[s] on [his] good days"), 59 ("hold[s] [vacuuming] off to good days"). We find claimant's account of his daily activities substantially consistent with the kind of disability he claims to be suffering, i.e., one that does not bother him 20 percent of the time, completely incapacitates him 20 percent of the time, and results in debilitating aftereffects the rest of the time. See Keller v. Shalala, 26 F.3d 856, 859 (8th Cir. 1994) (testimony concerning daily activities not inconsistent with disabling headache pain where claimant testified she did not engage in these activities when she had a headache).

In discrediting claimant's testimony, the ALJ also relied on a conclusion that "[t]he evidence indicates that the claimant's migraine headaches, and his pain in general, is adequately controlled with this current pain relief regimen." II Appellant's App. at 22. Our review of the record does not reveal substantial evidentiary support for this conclusion. There is certainly no medical opinion to that effect. Although an examining doctor noted the "[claimant] has some relief from his headaches with Tylenol #3 and Midrin" and that he is having "fair results" with Calan, id. at 204, claimant testified that "his headaches were getting more frequent until the doctor put [him] on Calan," but that now "they've leveled

-11-

out, stayed pretty consistent [at four to seven per week] since then," id. at 52. He also testified that although the Tylox will help the headaches "ease away," it does not stop them, explaining that "[i]t seems like they have to run their course." Id. at 54-55.

Finally, the ALJ relied on purported inconsistent statements made by claimant to his doctors concerning his use of alcohol and, without elaboration, the fact that "claimant reacted in a harsh and an excited manner when he was told he was no longer going to be given narcotic pain relief remedies by Dr. Dawson." Id. at 22. Our review of the record revealed no significant inconsistencies regarding claimant's purported use of alcohol, and we note that claimant's reaction to the possible withdrawal of narcotic pain medication is not inconsistent with claimant's testimony that his headaches cause him significant pain.

We are left then with the ALJ's observation that "claimant is suffering from no loss of muscle mass or signs of atrophy," and his conclusion that "claimant is not lying in bed recuperating from migraine headaches as often as he alleges." Id. at 22. This is a legitimate observation, peculiarly within the province of the fact-finder, but given the other errors in the ALJ's credibility determination, it is not sufficient to sustain that determination.

The ALJ's credibility determination must therefore be reversed. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion

to remand either for further administrative proceedings or for an immediate award of benefits." Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993). Remand for an immediate award is appropriate when additional fact finding would serve no useful purpose. See Sorenson v. Bowen, 888 F.2d 706, 713 (10th Cir. 1989). Here, the vocational expert testified that if claimant's testimony was credible, he would not be able to work. See II Appellant's App. at 68-70. Accordingly, we find no reason for additional administrative proceedings in this case, now five years old, and instead exercise our discretionary authority to remand for an immediate award of benefits.

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED with directions to remand the case to the Commissioner of Social Security for an immediate award of benefits.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

No. 96-5177 -- Pennington v. Chater

**BRORBY**, Circuit Judge, dissenting.

As the majority recognized at the outset, the only issue on appeal is whether the Administrative Law Judge's determination that Mr. Pennington's testimony was "not always consistent with the documentary evidence or with itself" is supported by substantial evidence in the record. However, while purporting to apply a substantial-evidence standard to its review of the Administrative Law Judge's credibility determination, the majority transgressed the well-established boundaries of that standard by dissecting the record, reweighing the evidence, and ultimately substituting its conclusions for those of the trier of fact.

This court has long recognized the Administrative Law Judge is "'optimally positioned to observe and assess witness credibility.'" *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 801(10th Cir. 1991)). Thus, while we do not afford absolute deference to an Administrative Law Judge's credibility determination, *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993), we "recognize that some claimants exaggerate symptoms for purposes of obtaining government benefits, and deference to the fact-finder's assessment of credibility is the general rule." *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987); *see also Gay v. Sullivan*, 986

F.2d 1336, 1339 (10th Cir. 1993). Accordingly, we are free to overturn a fact finder's credibility determination only where there is a conspicuous absence of credible evidence to support that determination. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992). We cannot overturn a credibility determination simply because there is evidence in the record that supports a finding other than the one the Administrative Law Judge made. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In reviewing the record, we may not reweigh the evidence nor substitute our judgment for that of the Administrative Law Judge. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Reviewing the record with these important boundaries in mind, I conclude there is substantial evidence to support the Administrative Law Judge's credibility determination.

The Administrative Law Judge found Mr. Pennington's testimony regarding disabling pain from ocular migraine headaches to be "credible only to the extent that it is reconciled with the objective medical evidence." More specifically, the Administrative Law Judge noted Mr. Pennington's testimony regarding the disabling effect of his pain was inconsistent with his own testimony concerning his daily activities and sleep patterns, as well as the documented medical evidence

itself. These objective observations and the resulting determination that Mr. Pennington's credibility was limited plainly are supported in the record.

For example, Mr. Pennington testified he is significantly functionally restricted eighty per cent of the time -- he cannot function at all on days when he has a headache (twenty per cent of the time) and can undertake only very limited activity on days when he is either going into or coming out of a migraine headache (sixty per cent of the time). Yet, he testified and documented on various disability reports he regularly makes his own meals, keeps house, does laundry, goes shopping, tends his pets, and sleeps eight to ten hours per night. In addition, he occasionally goes fishing, enjoys nighttime photography, visits with relatives, and drives his car on a weekly basis. On a Reconsideration Disability Report completed in September 1992, Mr. Pennington represented he is unable to do yardwork; however, on a pain questionnaire he completed in 1992, he indicated his daily activities included household chores and mowing the yard. Medical records indicate Mr. Pennington went camping and slept on the ground for two weeks in 1992, after he had filed an application for Disability Insurance benefits. This evidence amply supports the Administrative Law Judge's determination Mr. Pennington's testimony concerning the nature and severity of

his disability was credible only to the extent it was supported by objective medical evidence.

The Administrative Law Judge further noted Mr. Pennington's testimony exhibited "embellishment, exaggeration, and a strong secondary gain motive." Mr. Pennington's unsolicited statement that he believes he has paid his dues as compared to those people who are drawing social security benefits but have never paid anything into the social security program supports a reasonable conclusion Mr. Pennington is motivated by secondary gain. The Administrative Law Judge's observation that Mr. Pennington's testimony was embellished or exaggerated reflects the claimant's demeanor as a witness. A claimant's demeanor is uniquely apparent to the Administrative Law Judge -- it is not the type of observation we can readily evaluate on the basis of a bare record. Since we have no basis on which to question this subjective, yet important, conclusion, questions of demeanor are correctly left for the fact finder. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (subjective measure of credibility peculiarly within the Administrative Law Judge's judgment is one relevant factor to consider when evaluating credibility of pain testimony).

For these reasons, I would affirm the judgment of the United States District Court for the Northern District of Oklahoma.