**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GERALDINE PRINCE,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,   *

      Defendant-Appellee.

No. 97-5176
(D.C. No. 95-CV-1136)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** **

---

Before **BALDOCK** , **EBEL** , and **MURPHY** , Circuit Judges.

---

      After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*      Pursuant to Fed. R. App. P. 43(c), Kenneth S. Apfel is substituted for
John J. Callahan, former Acting Commissioner of Social Security, as the
defendant in this action.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Claimant Geraldine Prince applied for Social Security disability insurance and Supplemental Security Income benefits in 1993, alleging disability due to a variety of physical and mental impairments.  In what now stands as the final decision of the Commissioner, an administrative law judge found, at step-five of the five-part sequential process for determining disability, that claimant was not disabled.  The district court affirmed the Commissioner's decision, and claimant appeals.  Applying the same standard of review as the district court, we review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards.  See Nguyen v. Shalala, 43 F.3d 1400, 1402 (10th Cir. 1994).

The ALJ determined that claimant was impaired by "low back pain, status post surgery; hypertension, controlled with medication; a nonsevere anxiety-related disorder; a breathing condition with a history of smoking; and osteroarthritis of the lumbosacral spine," Appellant's App. Vol. II at 26, and that she was limited to sedentary work allowing flexibility in standing and sitting and not requiring significant stooping, see id. at 27.  These impairments, the ALJ found, precluded her from performing her past relevant work as an airport security screener and janitor, both of which were performed at the medium

exertional level.  Because claimant was 54 years old at the time of the hearing (closely approaching advanced age), had an eleventh grade education (limited education), and was limited to sedentary work, she would be presumptively disabled under the Medical-Vocational Guidelines if she did not have any skills that would be transferable to another job.     See  20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.09, 201.10.  If she had transferable skills, she would not be presumptively disabled.    See id. § 201.11.  The ALJ found that she had transferable skills.

The ALJ based this finding on the testimony of a vocational expert regarding claimant's work as an airport screener.  This work required her to examine the contents of passengers' bags using an x-ray machine.  The vocational expert classified this work as semi-skilled, and further testified that through this work, claimant had acquired work skills--which, in the words of the ALJ, were "looking for certain kinds of individuals and certain kinds of objects, operating certain equipment, and completing certain reports," Appellant's App. Vol. II at 27--that would transfer to the sedentary jobs of gate tender and night watchman. The expert also testified that there were 400 such jobs available in Oklahoma and 70,000 such jobs available nationwide.  Relying on this testimony, the ALJ found that because claimant could perform jobs that were sufficiently available in the economy, she was not disabled.

On appeal, claimant raises two issues. First, she contends that the ALJ erred in concluding that her work as an airport screener was semi-skilled rather than unskilled. Because "[a] person does not gain work skills by doing unskilled jobs," 20 C.F.R. §§ 404.1568(a), 416.968(a), claimant argues she would be presumptively disabled if this work were classified as unskilled since she would have no transferable skills. The premise of claimant's argument is that the vocational expert's testimony directly contradicts the Dictionary of Occupational Titles (DOT). She contends that the DOT classifies this work as unskilled, and that the DOT's classification of a job should create a rebuttable presumption of the skill level required by that job. She further argues that because the vocational expert's testimony that that work was semi-skilled directly contradicted the DOT, and there was no explanation for the difference, the DOT was not properly rebutted, and its alleged classification of the work as unskilled should control.

In determining whether an individual has any transferable skills, the focus is on the individual's past relevant work. See id. §§ 404.1568(d)(1), 416.968(d)(1) ("We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."); S.S.R. 82-41, 1982 WL 31389, at *2 ("Transferability means applying work skills which a person has demonstrated in vocationally relevant

-4-

past jobs to meet the requirements of other skilled or semiskilled jobs.").
Claimant does not identify, nor are we aware of, any requirement that an ALJ rely
on or consider the DOT in determining what transferable skills a claimant may
have obtained through past relevant work. While an ALJ may be able to consult
the DOT regarding skills involved in past work,      see id. at *4, regulations
specifically note the appropriateness of vocational expert testimony regarding the
transferability of skills.      See 20 C.F.R. §§ 404.1566(e); 416.966(e) ("If the issue
in determining whether you are disabled is whether your work skills can be used
in other work and the specific occupations in which they can be used, or there is a
similarly complex issue, we may use the services of a vocational expert or other
specialist."). The cases on which claimant relies to contend that the DOT creates
a rebuttable presumption concerning certain facts involve not whether skills were
obtained through past work, but the analytically distinct and subsequent inquiry
into whether jobs exist in the national economy that an individual with certain
impairments and other characteristics can perform.      See Johnson v. Shalala  , 60
F.3d 1428, 1434-35 (9th Cir. 1995);     Smith v. Shalala  , 46 F.3d 45, 47 (8th Cir.
1995); Tom v. Heckler  , 779 F.2d 1250, 1255-56 (7th Cir. 1985);      Mimms v.
Heckler , 750 F.2d 180, 186 (2d Cir. 1984);     cf. 20 C.F.R. § 404.1566(d) ("When
we determine that unskilled, sedentary, light, and medium jobs exist in the
national economy . . . , we will take administrative notice of reliable job

information available from various governmental and other publications [including DOT].").

The only evidence in the record relevant to the transferability of claimant's skills was the vocational expert's testimony, clearly a proper evidentiary source on this topic. Contrary to claimant's implicit argument, nothing obligated the ALJ to search the DOT to determine whether the expert's testimony was consistent with the DOT. Claimant was represented by counsel at the hearing, and while counsel questioned the expert regarding DOT codes, he did not cross-examine her regarding the alleged inconsistency between her testimony and the DOT. Cf. Gay v. Sullivan, 986 F.2d 1336, 1340 n.2 (10th Cir. 1993) (noting limit on court's ability to consider challenge to expert's testimony on appeal where counsel failed to cross-examine expert at hearing on issue in question), Barker v. Shalala, 40 F.3d 789, 795 (6th Cir. 1994) (noting propriety of cross-examining expert based on DOT). Further, there is no other indication in the administrative record that the expert's testimony may have disagreed with the DOT. Thus, on this record there was no inconsistency or conflict for the ALJ to resolve. We conclude that the ALJ's finding that claimant had transferable skills is supported by substantial evidence. [1]

---

[1] In a footnote in her brief, claimant "points out that neither the job as gate guard or night watchman requires a person to use x-ray equipment to screen for
(continued...)

Claimant's second argument on appeal challenges the ALJ's finding that there were a significant number of available jobs that claimant could perform. She argues that the ALJ failed to consider the factors relevant to determining whether jobs exist in significant numbers suggested by Trimiar v. Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992), specifically the reliability of the vocational expert and the severity of claimant's impairments.

A claimant will not be found disabled if she can perform "work that exists in the national economy," which means "work . . . exist[ing] in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The determination that work exists in

---

[1](...continued)
objects. Even if this were an acquired work skill, it is not transferable to the work cited by the expert." Appellant's Br. at 14 n.3. To the extent claimant is contending that the ALJ somehow erred in his assessment of the transferability of claimant's skills, we note that this "argument" is insufficiently developed and unsupported by legal authority. See Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); Brownlee v. Lear Siegler Mgmt. Servs. Corp., 15 F.3d 976, 977-78 (10th Cir. 1994). Additionally, it does not necessarily follow that the skill identified by the expert as looking for suspicious objects using the x-ray machine would not transfer to the other positions. Cf. 20 C.F.R. §§ 404.1568(b), 416.968(b) (explaining that semi-skilled jobs "may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work."). And again, while claimant was represented by counsel before the ALJ, nothing in the record undermines the expert's testimony that claimant's identified skills would transfer to the other positions. Cf. Gay, 986 F.2d at 1340 n.2.

-7-

significant numbers in the national or regional economy does not depend on whether the work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired for a job if he or she applied.  See id.  We have "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number,'" leaving that decision to the ALJ's "common sense in weighing the statutory language as applied to a particular claimant's factual situation."    Trimiar , 966 F.2d at 1330 (quotation omitted).

The vocational expert testified that there were 350 jobs in Oklahoma and 50,000 nationwide as a gate tender and that there were fifty jobs in Oklahoma and 20,000 jobs nationwide as a night watchman.    [2]  The expert also stated that these jobs were representative but not exhaustive of the jobs someone with claimant's impairments could perform.  The ALJ properly considered the severity of claimant's impairments and their effect on her ability to work.  Claimant presents no reason why we should question the expert's reliability.  We see no reversible error in the ALJ's determination that there were a significant number of jobs claimant could perform.

---

[2]     The vocational expert stated that these figures included only sedentary positions.  There are additional jobs in these categories classified at the light exertional level.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge