**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MICHAEL LIESSMANN,

      Plaintiff - Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant - Appellee.

No. 02-2070
(D.C. No. CIV-99-1474 JC/JHG)
(D. New Mexico)

---

**ORDER AND JUDGMENT** [*]

---

Before **BRISCOE** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Shannon Rutledge's surviving spouse appeals from an order of the district court affirming an order by the Commissioner of the Social Security Administration denying disability benefits to her. She sought those benefits under Title II and Title XVI of the Social Security Act. On appeal, she argues that the Commissioner failed to properly assess her mental impairment, by, among other things, disregarding the opinions of her treating and consulting physicians and by understating the extent to which her impairment barred her from employment. Because we conclude that substantial evidence supports the Commissioner's decision, and because that decision was reached in accord with relevant legal standards, we must affirm.

A.    Background

Claimant Shannon Rutledge filed her application for benefits in May of 1995, two months after she was admitted to a hospital in the wake of an attempted suicide. She alleged that she was disabled due to a severe and chronic depression, a condition exacerbated by a series of physical impairments, including seizures, an anxiety disorder, and pain in her back and left leg. Tragically, in May of 2002, more than five years after the ALJ issued his ruling, Ms. Rutledge committed suicide. Her surviving spouse, Michael Liessmann, has been substituted as a party to this appeal.

After a hearing at which Ms. Rutledge, her mother, and a vocational expert testified, the administrative law judge (ALJ) found that Ms. Rutledge suffered from the severe impairments of major depression, anxiety disorder, and a seizure disorder. Adhering to the five step sequential process required to assess claims of disability, *see* 20 C. F. R. §§ 404.1520; 416.920, he also found that this combination of conditions and symptoms prevented her from returning to her past work as an office manager. At step five in the sequential process, however, the ALJ determined that Ms. Rutledge retained the residual functional capacity to perform certain light duty work, including security/surveillance monitor, a highway flagger on a road construction crew, or some limited clerical work, and thus he found that she was not disabled for purposes of obtaining social security benefits.

Ms. Rutledge's medical history and course of treatment is well documented by the parties, and need not be repeated here.

B.     Legal Standards Governing Review

Our review is limited to two questions: 1) does substantial evidence support the Commissioner's decision?; and 2) does that decision comport with governing legal standards? In reviewing the ALJ's ruling, we may neither "reweigh the evidence nor substitute our judgment for the [Commissioner's]." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). If supported by substantial

evidence, the Commissioner's findings must be affirmed. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sisco v. United States Dep't of Health & Humans Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

C.    The ALJ's Decision

The ALJ did not dispute that Ms. Rutledge suffered from a severe depression, coupled with an anxiety disorder triggered by stress and interactions with the public. But after a lengthy summary of the medical record, he determined that she made significant progress after her initial hospitalization in March of 1995 and her readmission one month later. Her treatment records, according to the ALJ, showed a fairly steady, if not uninterrupted, trend toward improvement, especially after Ms. Rutledge's medications were properly adjusted. By August of 1995, Dr. Fury, one of the treating physicians, reported that Ms. Rutledge was "improving on her medications." Aplt. App., Vol. III at 392. In December of that year, the doctor noted that Ms. Rutledge was "doing quite well and is getting A's in school." *Id.* at 389. (Ms. Rutledge was enrolled in a vocational training program, where she was learning electronics.) She "look[ed] better than I have seen her since she started coming here." *Id.* Though she suffered a two-week bout of depression in August 1996, Dr. Fury observed that

she was nevertheless alert, oriented, and cooperative, and she recommended that Ms. Rutledge continue with her medications and counseling.

The ALJ bolstered his account of Ms. Rutledge's improved medical condition by noting strengths in other aspects of her life. For instance, he observed that she not only attended school daily, but she performed quite well there. Commenting on her enrollment in a difficult electronics class, he found that her performance at school contradicted her claim that she was precluded from working because of diminished concentration and memory abilities. School attendance, while not conclusive, "may be considered by the [Commissioner], along with medical testimony, in determining the right of a claimant to disability payments under the Social Security Act." *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (quotation omitted).

Similarly, the ALJ found that Ms. Rutledge's daily activities demonstrated her capacity to cope adequately with her mental impairments. She gardened, baked, fished, played golf, drove a car, exercised frequently, and shopped. Additionally, as the ALJ noted, Ms. Rutledge married in June of 1996, and for much of the relevant time period she attended weekly sessions of a support group, both of which reflected a degree of social isolation less marked than that urged by Ms. Rutledge.

At the same time, the ALJ discounted the extent to which Ms. Rutledge claimed to suffer uncontrollable bouts of decompensation (crying jags or rage), because none of her medical providers or counselors documented that these events occurred regularly (though at least one did mention that she had problems with emotional extremes) and because they did not occur in school. Likewise, as indicated above, he questioned Ms. Rutledge's assertion that her concentration and memory were impaired, again noting a lack of any medical documentation of these limitations.

Turning to Ms. Rutledge's specific work capabilities, the ALJ concluded that her medical impairments (those that he accepted as supported by the medical record) did not preclude her from all employment. Recognizing that she could only work in a low stress environment, one that did not require her to interact with the public, he found she was able to perform the occupations of surveillance monitor, highway flagger, and clerical work not involving public interaction. He determined that all of these jobs exist in significant numbers in the regional and national economy. His conclusion in this regard flowed from testimony at the hearing given by a vocational expert. The expert confirmed that these jobs satisfied the limitations on Ms. Rutledge's residual functional capacity imposed by the ALJ; that is, they are relatively free from stress and do not require much interaction with people.

The ALJ, however, rejected answers to certain questions by the vocational expert given on cross-examination, answers that effectively eliminated the occupations identified as suitable for Ms. Rutledge. Those questions, posed by Ms. Rutledge's lawyer, asked the expert to assume that Ms. Rutledge's testimony was true, testimony concerning what she reported were limitations on her concentration abilities as well as pain in her back and left leg. The ALJ ruled that her testimony on these points was not credible, because it was unsupported by the medical record. He therefore refused to consider the expert's testimony on cross-examination.

D.     Legal Analysis

We conclude that the ALJ properly held that the Commissioner met her burden at step five in the sequential process. We believe that the medical record, the evidence concerning Ms. Rutledge's daily activities and her performance at school, and the testimony of the vocational expert show that Ms. Rutledge could perform one or more of the occupations cited by the ALJ in his ruling. In addition, we conclude that the ALJ did not err in refusing to accept testimony given by the vocational expert on cross-examination. Consequently, we believe that the evidence marshaled by the ALJ, though certainly not overwhelming, constitutes substantial evidence in support of his decision. Unable to substitute our judgment for his, we cannot disturb that ruling.

We acknowledge, as did the ALJ, that several of the physicians who examined or evaluated Ms. Rutledge labeled her "disabled." Yet not a single physician stated that she was unable to work for a continuous twelve-month-period after the onset of her impairment. Such an assertion is the critical element of a disability claim. To establish eligibility to benefits, a claimant must show she is unable to work because of a medically determined impairment that lasts continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A) (defining "disability").

Our observation that no physician reported that Ms. Rutledge's impairment met the above condition does not conflict with the opinion of Dr. Hutchinson, one of the Commissioner's consulting psychiatrists. Granted, he said that "[a]t this level of depression, it is difficult to see how [Ms. Rutledge] could be able to participate in competitive employment." Aplt. App., Vol. III at 374. But this statement falls short of establishing, as it must to trigger an entitlement to benefits, that Ms. Rutledge was unable to work for a continuous twelve-month period.

We similarly find no fault with the ALJ's stated reasons for discounting various other opinions given by several of Ms. Rutledge's treating and consulting physicians. Dr. Funk, who saw Ms. Rutledge for only one hour, admitted that he had no test data and thus could only base his opinion about Ms. Rutledge's

disability on her "self report."     *Id.* at 433.  Likewise, with respect to the conflict in the medical record concerning whether Ms. Rutledge suffered from multiple sclerosis, we cannot say the ALJ erred in agreeing with the specialist, Dr. Burnbaum, who reported "there isn't anything on my examination today to suggest Multiple Sclerosis."     *Id.* at 432.  The governing regulations generally require the ALJ to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C. F. R. §§ 404.1527(d)(5); 416.927(d)(5).

The judgment of the United States District Court for the District of New Mexico is AFFIRMED.  Ms. Rutledge's motion for remand is DENIED.  The motion to supplement the record with her death certificate is GRANTED.

Entered for the Court

Wade Brorby
Senior Circuit Judge