**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICHARD S. CHUCULATE,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 05-7045
(D.C. No. CIV-03-536-P)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **McKAY**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. <u>See</u> Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Richard S. Chuculate appeals from the denial of his application for social security disability and supplemental security income benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and reverse.

Background

Plaintiff was born in July 1959, making him forty-six years old now. He went to school through ninth grade and then worked as a laborer, doing such jobs as pipe fitter, nursery worker (planting and harvesting trees and shrubs), and contract mower. He filed his claim for disability and supplemental security income benefits in June 1999, asserting that he became disabled in March 1999 due to the residuals of chronic hepatitis C, heart valve replacement, and hernia surgery–including chronic fatigue and occasional dizziness, and chest pain. He had a hernia repaired in mid-March 1999, but by the end of that month he needed emergency treatment for congestive heart failure and stroke. His aorta and mitral valve were then replaced with prosthetic valves in April 1999.

Plaintiff's surgeon, Brian Wickwire, treated plaintiff from April 1999 through at least October 2000, which is about the last date of the medical records here. Over this period of time, Dr. Wickwire offered three opinions of plaintiff's capabilities. On May 19, 1999, he wrote a letter to the Social Security Administration (SSA) stating that plaintiff was disabled by his valve replacements

and chronic hepatitis C.  Admin. R. at 282.  He said that plaintiff had mild dysarthria (the speech impediment that results from stroke), would permanently be on Coumadin (without specifying the implications of this blood-thinning drug), and was easily fatigued due to his valve replacements.  Id.

Eight months later, on February 24, 2000, Dr. Wickwire wrote a second letter to SSA, revising his opinion about plaintiff's capabilities.  Id. at 231.  This time, he said that plaintiff complained of chronic dyspnea (shortness of breath) on heavy exertion or fast walking and had chronic fatigue correlating to elevated SGOT and SGPT (the elevation of the liver enzymes resulted from past alcohol and intravenous drug use).  Id.  Dr. Wickwire said that within the month plaintiff was going to start a year's treatment with ribavirin and interferon, which would have side effects of myalgia (muscle pain), low grade fevers, and chronic fatigue.  Id.  But he indicated that plaintiff could work within these limitations:  lifting no more than twenty pounds and walking only intermittently, at a slow pace, and for no more than two hours per day.  Id.

The hearing before the administrative law judge (ALJ) was held on October 3, 2000–about seven months after Dr. Wickwire's February 2000 letter.  A couple of weeks after the hearing, on October 19, 2000, Dr. Wickwire prepared a "Medical Source Statement"–i.e., a checkmark-style assessment of plaintiff's residual functional capacity (RFC).  Id. at 401-03.  This time, Dr. Wickwire found

plaintiff capable of lifting only ten pounds occasionally and less than ten pounds frequently; of standing or walking for less than two hours in an eight-hour day but sitting was not affected; of limited pushing and pulling of arm and leg controls; of no climbing or crawling and occasional balancing, kneeling, and crouching; of unlimited reaching, handling, fingering, and feeling; of unlimited seeing, hearing, and speaking; and of unlimited exposure to noise, but limited exposure to temperature extremes, dust, vibration, humidity/wetness, hazards (machinery, heights), fumes, odors, chemicals, and gases. Id. Dr. Wickwire added brief explanatory comments on this form, but made no comment about plaintiff's chronic fatigue, chest pain, and dizziness, see id., although there are numerous references to these complaints in the record.

The ALJ reopened the record to add Dr. Wickwire's October 2000 Medical Source Statement, and decided to rely on it for his RFC finding. See id. at 17-18. Because this new assessment reduced plaintiff's capabilities compared to the February 2000 letter, however, the ALJ submitted a new written hypothetical question to a vocational expert (VE) based on these revised limitations. Id. at 129. The VE responded in writing, identifying three sedentary, unskilled jobs that plaintiff could do–assembly, order clerk, and machine operator. Id. at 131-32. The VE noted that there are over ten thousand jobs regionally in each of these categories, and many times more than that nationally. See id. However,

the VE left out one of plaintiff's limitations (limited use of lower extremities) in her restatement of the ALJ's hypothetical. Id. at 131.

Apparently not noticing the omission, the ALJ sent the new evidence to plaintiff, notifying him that he could comment on it, submit additional records for the ALJ's consideration, submit his own written questions for the VE, or ask for a supplemental hearing. Id. at 134-35. Plaintiff apparently did not notice the mismatch in the VE's answer, either, because his response was limited to submitting an additional written question for the VE. Id. at 136. The proposed question would have added to Dr. Wickwire's October opinion the additional (and contradictory) limitations of only occasional reaching, handling, and fingering, and the freedom to sit or stand at will. Id. When the ALJ asked plaintiff to point to evidence to support these limitations, id. at 137, plaintiff said in conclusory fashion that they were based on plaintiff's testimony, some hospital records, and Dr. Wickwire's new assessment, and he revised his hypothetical to show plaintiff restricted to no more than two hours of standing and unrestricted on sitting, instead of needing to alternate sitting and standing at will. Compare id. at 136 with id. at 138. The ALJ did not submit plaintiff's proffered question to the VE, and relied on the VE's response to his own question to find that plaintiff was not disabled.

## Issues on Appeal

Plaintiff's arguments are directed at steps four and five of the evaluation sequence. See generally Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988). He argues that the ALJ erred at step four by making an RFC finding that does not include all of his physical impairments, specifically chronic fatigue, chest pain, and dizziness. He also argues that the ALJ violated his right to due process at step five by denying him permission to submit a post-hearing written question to the VE, and erred by relying on the VE's written response to the ALJ's question because it failed to repeat the precise RFC the ALJ determined plaintiff to have.

## Step Four/RFC

Plaintiff's step four argument is internally inconsistent. He argues that the ALJ should have given substantial weight to his treating physician's opinion, Aplt. Br. at 21, while ignoring that the ALJ relied on Dr. Wickwire's most recent statement for his RFC finding. Plaintiff has not pointed to any reason to believe that Dr. Wickwire's October 2000 opinion did not take all of his impairments into account. The February 2000 letter in fact indicates otherwise: while noting plaintiff's chronic fatigue, which was expected to continue for at least a year, Dr. Wickwire still indicated that plaintiff could work with certain limitations.

Admin. R. at 231. He then increased plaintiff's limitations in his October statement, which, by itself, implies that he incorporated plaintiff's continuing complaints into his answers. See id. at 401-03. Further, plaintiff testified that his chest pain was the result of exertion, but Dr. Wickwire's October statement limited his exertion. See id. In addition to the restrictions on lifting, standing, walking, balancing, etc., it expressly states that he should not perform heavy cardiovascular exertion and should not push more than ten pounds of force frequently with his arms or legs. Id. at 402. Dizziness (inability to concentrate) is not mentioned in any of Dr. Wickwire's opinions, but plaintiff has not pointed to any reason to believe that it was not incorporated into Dr. Wickwire's answers. We reject plaintiff's step four argument.

## Step Five/Failure to Forward Question to VE

Plaintiff also argues that the ALJ violated his right to due process at step five by denying him permission to submit a post-hearing written question to the VE. We hold that the ALJ's decision not to forward plaintiff's written question to the VE was not error. When plaintiff responded to the ALJ's request to support the additional limitations plaintiff wished to include in his hypothetical, plaintiff made only a conclusory reference to evidence supporting the impairments he wished to add–only occasional reaching, handling, and fingering–and he revised his hypothetical to show that he was restricted to no more than two hours

of standing and unrestricted on sitting, instead of needing to alternate sitting and standing at will.  See id. at 136, 138.  In his brief on appeal, he appears to concede that there is no evidence to support the additional impairments, as he asserts that

> [t]he Commissioner argues in her brief to the district court that the ALJ need not submit to the VE limitations the ALJ finds unsupported by the evidence.  However, denying Chuculate, as the claimant, the opportunity to question the VE as to the effects of limitations from which Chuculate claims to suffer is to deny him due process.

Aplt. Br. at 11 (citation omitted).  The limitations plaintiff asserts, however, must be supported by the medical evidence or the ALJ should not include them in a hypothetical question.  See Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).

Plaintiff's claimed limitations are actually contradicted by Dr. Wickwire, who said in October 2000 that plaintiff was unlimited in reaching, handling, and fingering, and said nothing that would indicate that plaintiff needs to alternate sitting and standing at will.  Dr. Wickwire limited plaintiff's standing and walking to less than two hours total but said his sitting was unaffected by his illnesses, and so the VE considered only sedentary jobs.  Plaintiff did not request any other cross-examination than to pose this single question, and the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case.  See Gay v. Sullivan, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993).  We reject plaintiff's due process argument.

## Step Five/The VE's Response to the ALJ's Question

Plaintiff's last issue is that the VE's written response to the ALJ's post-hearing hypothetical question omitted an impairment, making it error for the ALJ to rely on the VE's answer. The VE did omit an impairment–plaintiff's limited ability to use leg controls. The hypothetical question must state the claimant's impairments "with precision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). We think it follows that the VE's written response to a written question must also repeat the impairments with precision. Whether the omission was inadvertent or not, the ALJ should verify that the VE meant to identify jobs that plaintiff can do with the exact RFC the ALJ determined plaintiff to have. Because the VE did not give the Dictionary of Occupational Title numbers for the jobs that she said that plaintiff can do, we cannot check the descriptions to see if leg controls are involved. Therefore, a remand is required.

The judgment of the district court is REVERSED and the case is REMANDED for additional proceedings consistent with this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge