In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2233

PAUL D. DIMMETT,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social
Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:14-cv-00095-RLY-WGH — **Richard L. Young**, *Chief Judge.*

SUBMITTED FEBRUARY 11, 2016— DECIDED MARCH 14, 2016

Before WOOD, *Chief Judge,* and POSNER and WILLIAMS,
*Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, who is now 62 years
old, applied in 2011 to the Social Security Administration for
disability benefits. He claimed to be disabled from any gain-
ful employment by a combination of ailments including
asthma, chronic obstructive pulmonary disease (COPD), as-
bestosis, and a heel spur in his right foot. Turned down by

the administrative law judge who heard his case, and then by the Social Security Appeals Council (which declined to review the administrative law judge's decision), he appealed to the district court, also without success; for on the recommendation of the magistrate judge to whom the district judge had referred the case, the district judge affirmed the denial of benefits without discussion, precipitating this appeal, which highlights several important recurring issues in the disability program.

For 33 years before the June day in 2011 on which, shortly after suffering a possible heart attack, he quit his job and simultaneously applied for benefits, the plaintiff had been a sheet metal journeyman, work that is conceded to be "heavy" and beyond his physical capacity to do any longer. In fact for several years prior to his onset date he had been given accommodations at work to compensate for his diminishing abilities, and as a result was effectively performing "light" rather than "heavy" work in 2011.

In 2001, while still employed, he'd suspected that he was being exposed to asbestos on the job. A doctor whom he consulted concluded from X-rays of the plaintiff's lungs, and from breathing tests, that the plaintiff's lungs indeed had scarring "consistent with asbestos exposure." The doctor also inferred from the tests a "possibility of decreased lung volume." As far as we can tell, the plaintiff hadn't taken the doctor's advice to consult an expert in asbestos-related diseases, but around the time of his possible heart attack he had consulted a doctor about shortness of breath and chest pain and the doctor had diagnosed COPD and encouraged the plaintiff to stop smoking. Earlier he had also been diagnosed

and treated for asthma. He used an inhaler to alleviate his pulmonary distress.

The administrative law judge determined that the plaintiff's asthma and chronic obstructive pulmonary disease were "severe impairments," but noted that the plaintiff had not been diagnosed with asbestosis and ruled that his heel spur was not a significant impediment to working. The plaintiff disagrees with the latter two findings, but his appeal primarily challenges the administrative law judge's further finding that the plaintiff's asthma and chronic obstructive pulmonary disease, although they preclude his returning to his old job as a sheet metal worker, do not disable him from full-time employment in jobs involving unskilled medium work provided that the work doesn't expose him to extreme temperatures, humidity, or airborne pollutants.

For asthma to be disabling, the Social Security Administration's regulations require that "attacks … , in spite of prescribed treatment and requiring physician intervention, [must occur] at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03(B). The administrative law judge ruled that the plaintiff's asthma didn't reach that level. That may be correct, but he failed to consider the effect of the asthma—which remember he acknowledged was a "severe" impairment—on the plaintiff's other impairments, notably his other breathing impairment: chronic obstructive pulmonary disease. Worse, he failed even to mention the regulations' test for determining whether a claimant's COPD is presumptively disabling. The test requires assessment of the patient's $FEV_1$—forced expiratory volume in one second, *id.* § 3.02(A)—the volume of air that a person of a given height can breathe out in one second

after taking a deep breath. The higher the volume, the healthier the person's lungs. A pulmonary function test found that the plaintiff's $FEV_1$ was only 51 percent of normal for a person of his height. The administrative law judge did not discuss whether this implied a low enough $FEV_1$ score to be presumptively disabling, and also did not discuss how this low score affected the plaintiff's residual functional capacity for work.

In fact the administrative law judge ignored the plaintiff's COPD almost entirely when determining what work he could still perform, and as a result there is no evidentiary basis for the finding that he's capable of engaging in medium work. One might think that even though he can't do medium work he can do light or sedentary work. But his age makes the distinction between medium and light work critical: a person of his age who has no skills transferable to light or sedentary work is presumptively disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.06; *id.*, Table No. 2, Rule 202.06.

Having determined to his satisfaction the scope and limits of the plaintiff's impairments, the administrative law judge asked the vocational expert assigned to the case whether there were jobs that the plaintiff could perform given his impairments. The administrative law judge explained that those impairments ruled out jobs in which the plaintiff would be exposed to temperature extremes and humidity as well as to such lung irritants as odors, fumes, dust, and chemicals. Testifying by phone at the end of the hearing and thus unfamiliar with the medical testimony, the vocational expert listed three types of job that he thought the plaintiff could perform: "order filler," "self-service laundry and dry

cleaning attendant," and "dining room attendant." Order filler covers a variety of jobs and tasks, such as: "conveys materials and items from receiving or production areas to storage or to other designated areas by hand, handtruck, or electric handtruck. Sorts and places materials or items on racks, shelves, or in bins according to predetermined sequence, such as size, type, style, color, or product code. Sorts and stores perishable goods in refrigerated rooms. Fills requisitions, work orders, or requests for materials, tools, or other stock items and distributes items to production workers or assembly line. … May use computer to enter records. May compile worksheets or tickets from customer specifications. May drive vehicle to transport stored items from warehouse to plant or to pick up items from several locations for shipment." U.S. Department of Labor, *Dictionary of Occupational Titles*, "Laborer, Stores," www.occupationalinfo .org/92/922687058.html (visited March 11, 2016, as were the other websites cited in this opinion). Neither the vocational expert nor the administrative law judge discussed whether the plaintiff, given his pulmonary problems, can move heavy items, or, given his age, education, and work history, track work orders and use order-management software.

The other two jobs mentioned by the vocational expert should have caused alarm bells to ring in the administrative law judge's ears given that he'd instructed the vocational expert that the plaintiff is incapable of performing jobs that would expose him to temperature extremes, humidity, and airborne pollutants. A laundry or dry-cleaning attendant will routinely inhale odors, fumes, dust, and chemicals, as these are jobs that require the employee to perform such chores as dampening clothes with cleaning solvent and bleach. And a dining room attendant, among other duties,

carries dirty dishes to the restaurant's kitchen, where he is likely to inhale fumes, steam, and odors and be exposed to heat.

And so we have in this case still another example of fatally weak testimony by a vocational expert. See, e.g., *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702, 708–12 (7th Cir. 2014); *Hermann v. Social Security Administration*, 772 F.3d 1110, 1112–14 (7th Cir. 2014). Compounding the weakness, both the administrative law judge, in uncritically accepting the vocational expert's testimony, and the vocational expert, in failing to understand the requirements of the jobs he mistakenly thought the plaintiff capable of performing, appear to have ignored the most current manual of job descriptions—the O*NET (see O*NET, www.onetcenter.org/overview.html). It's true that the Social Security Administration, while aware of the obsolescence of the *Dictionary of Occupational Titles*, hasn't endorsed the O*NET and in fact is developing its own parallel classification system. See Social Security Administration, *Occupational Information System Project*, www.ssa.gov/disability research/occupational_info_systems. html. But this system is not expected to be rolled out for at least three more years, leaving a vacuum that the O*NET may fill. And so we point out that the O*NET entry for "laundry and dry-cleaning workers" explains that the worker must "apply bleaching powders to spots and spray them with steam to remove stains," "spray steam, water, or air over spots to flush out chemicals," "mix bleaching agents with hot water in vats," "mix and add detergents, dyes, bleaches, starches and other solutions and chemicals," and "sprinkle chemical solvents over stains." O*NET, *Laundry and Dry-Cleaning Workers*, www.onetonline.org/link/summary/51-6011.00. So the job is

wholly unsuitable for Dimmett. As for a dining-room attendant, O*NET lists "stamina" as required (and surely it's required by a laundry or dry-cleaning worker as well—the most disagreeable of the three jobs for someone with serious respiratory problems), defining it as "the ability to exert yourself over long periods of time without getting winded or out of breath." O*NET, *Dining Room and Cafeteria Attendants and Bartender Helpers*, www.onetonline.org/link/ summary/35-9011.00. And "order filler" may require technological skills that the plaintiff does not have. *Id.*, *Order Fillers, Wholesale and Retail Sales*, www.onetonline.org/link/sum mary/43-5081.04. And affecting all these jobs, though the plaintiff's heel spur is not disabling in itself the pain it causes would, by further impairing his stamina, further limit his ability to perform any of them. The administrative law judge said that the pain wasn't recurring and wouldn't interfere with the plaintiff's working, but in saying this he ignored uncontradicted evidence that orthotic shoe inserts would not give the plaintiff sufficient relief from his pain. And he did not explain why he found only partially credible the plaintiff's testimony that the heel spur caused pain that impedes his daily functioning.

So: the administrative law judge ignored key medical evidence and the vocational expert ignored the limitations that the administrative law judge placed on the type of job that the plaintiff is able to perform. But there is more to criticize in the handling of this case—there is the rubber stamping of the vocational expert's testimony by the magistrate judge and by the district judge, who upheld the denial of disability benefits—the district judge without an explanation.

Here is the critical portion of the magistrate judge's opin-
ion (omitting citations):

> First, Dimmett argues that the ALJ's determination that
> he is capable of working as a "dining room attendant" or
> "self-service laundry/dry cleaning attendant" is incon-
> sistent with the ALJ's finding that Dimmett cannot work
> with "concentrated exposure to temperature extremes,
> humidity, odors, fumes, dusts, chemicals, and other res-
> piratory irritants." Dimmett's point is well-taken but does
> not require remand.

> I agree that the ALJ's conclusions make strange bedfel-
> lows. A "dining room attendant" is what might commonly
> be called a "waiter" or "bus boy"—a person who trans-
> ports food or beverages from a kitchen to a dining area or
> dirty dishes from a dining area to a kitchen. And, of
> course, it is easy to imagine such work presenting concen-
> trated exposure to temperature extremes and odors. More
> intuitively, a "self service laundry/dry cleaning attendant"
> is a person who works in a laundromat or dry cleaning fa-
> cility. It is easy to imagine such work presenting concen-
> trated exposure to temperature extremes, humidity, odors,
> fumes, and chemicals.

> Even so, these seemingly inconsistent conclusions do
> not warrant remand. The ALJ based his conclusion … on
> testimony from a vocational expert whom he informed of
> Dimmett's limitations. Accordingly, the ALJ based his con-
> clusion on substantial evidence. …

> Meanwhile, Dimmett has presented only conjecture—
> not evidence—supporting his contention that this work is
> incompatible with his RFC [residual functional capacity].
> Because Dimmett has not called our attention to any evi-
> dence, I cannot find that the ALJ erred by ignoring evi-
> dence contrary to his conclusion.

This is not a reasoned analysis of the plaintiff's claim (notice for example the blind reliance on the vocational expert's hamstrung testimony)—and the district judge, in accepting the magistrate judge's recommendation, offered no analysis at all. Neither judge's opinion did justice to the plaintiff's claim.

The judgment of the district court is reversed with instructions to remand the case to the Social Security Administration.

REVERSED AND REMANDED