**Leonard RIVERA, Plaintiff,**

**v.**

**Nancy A. BERRYHILL, Acting Commissioner of Social Security,[1] Defendant.**

**CIV 16–0048 RB/KBM**

United States District Court, D. New Mexico.

Filed 03/16/2017

1. Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Helen Laura Lopez, Law Office of Helen Laura Lopez, Santa Fe, NM, for Plaintiff.

Manuel Lucero, US Attorney's Office District of New Mexico, Albuquerque, NM, Michael Arlen Thomas, Office of the General Counsel, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Robert C. Brack, UNITED STATES DISTRICT JUDGE

THIS MATTER came before the Court on the Proposed Findings and Recommended Disposition (PF & RD) by Chief Magistrate Judge Karen B. Molzen (*Doc. 29* ) filed on January 27, 2017. The Court has reviewed Plaintiff Leonard Rivera's Objections thereto (*Doc. 32* ), filed on February 9, 2017, and Defendant's Response to Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge (*Doc. 33* ), filed on February 23, 2017. Having conducted a *de novo* review, this Court overrules Plaintiff's objections, will adopt the recommendation of the Chief Magistrate Judge and will deny Plaintiff's Motion to Remand or Reverse (*Doc. 21* ).

## I. Standard of Review

When resolving objections to a magistrate judge's proposal, "the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R.

Civ. P 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation," when conducting a *de novo* review of a party's timely, specific objections to the magistrate judge's report. *In re Griego*, 64 F.3d 580, 583–84 (10th Cir. 1995). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000).

## II. Background [2]

Plaintiff's applications for Social Security benefits were denied at both the initial and reconsideration levels, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). ALJ Michelle Lindsay conducted a hearing and determined that Plaintiff was not disabled. After the Appeals Council denied review, Plaintiff appealed ALJ Lindsay's decision to this Court. Plaintiff obtained a remand, and a second hearing was held before ALJ Deborah Rose.

ALJ Rose again determined that Plaintiff is not disabled, finding that he maintains the residual functional capacity ("RFC") to "[p]erform less than the full range of light, and sedentary work" with various restrictions, including that "[h]e must use a cane for all his standing and walking[, and] would need to alternate between sitting and standing as needed, about every ten to thirty minutes." *AR* at 354. ALJ Rose employed this RFC at step

---

**2.** In the PF & RD, the Magistrate Judge presents a more detailed description of the facts and procedural posture (*Doc. 29* at 1–4). Only those portions relevant to Plaintiff's objections are described here.

five of the sequential evaluation process [3] to find that Plaintiff retains the ability to work as a mail sorter, office helper, or order clerk. *AR* at 364. Plaintiff appealed that decision to this Court.

In her PF & RD, Chief Magistrate Judge Molzen recommends that this Court find that: ALJ Rose did not misstate the burden of proof at step five; the ALJ's hypothetical question to the Vocational Expert ("VE") corresponds with Plaintiff's RFC, as required by case law; the VE's testimony was neither unacceptably vague nor confusing; the ALJ's decision was in accord with *Haddock v. Apfel* and SSR 00–4P; there is no conflict with the Dictionary of Occupational Titles ("DOT"); and, the VE and ALJ reasonably relied upon the DOT. *Doc. 29* at 4–21. Plaintiff objects and asserts that the Chief Magistrate Judge incorrectly determined that ALJ Rose applied the correct burden of proof at step five and "Fail[ed] to Properly Analyze or Develop the Issue of Bilateral Handling and Fingering." *Doc. 32* at 1–5.

## III. Analysis

### A. The Burden of Proof at Step Five

▮▮▮ Plaintiff objects to the Magistrate Judge's conclusion that ALJ Rose correctly stated and applied the burden of proof at step five of the sequential evaluation process. "If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). In legal terms, this is a burden of proof. *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000). However, the ALJ is "not responsible for providing additional evidence about [a claimant's] residual functional capacity because [the agency] will use the same residual functional capacity assessment that [it] used to determine if [the claimant] can do [his] past relevant work[]" at step four. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *see also Jones v. Apfel*, 202 F.3d 282 (10th Cir. 2000) (unpublished) ("If the evaluation of the claim proceeds to step five, the same RFC finding is considered along with other factors to determine whether the claimant can perform work other than his or her past relevant work.") (citations omitted).

When discussing step five, ALJ Rose stated that "[a]lthough the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration." *AR* at 347. In opposing this premise and the Magistrate Judge's conclusion that it is a correct statement of the law, Plaintiff argues that "[t]he Commissioner has the en-

---

3. The Social Security regulations implement a five–step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step one requires the claimant to show that he is not engaged in substantial gainful activity. At step two, the claimant must establish that he has a severe medically determinable impairment. At step three, the claimant must establish that his impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. If the claimant does not meet a so-called "listing" the process proceeds to step four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant meets this burden, the burden shifts to the Commissioner at step five to establish that the claimant can make an adjustment to other work.

tire burden of proof at step five, not the 'limited' one expressed in the prologue to the ALJ decision (AR 20). . . ." *Doc. 32* at 1.

While not intentionally so, Plaintiff's opening statement on this issue is telling. The cited page 20 of the administrative record is not from ALJ Rose's decision; it is from ALJ Lindsay's decision after Plaintiff's first administrative hearing. *Compare AR* at 20 *with id.* at 347. Plaintiff's mistake is understandable; the language he complains about is substantively identical and present in the "Applicable Law" sections of both decisions. *See id.* It appears that ALJs are uniformly employing this language, ostensibly at the direction of the Social Security Administration.

Of course, simply because multiple ALJs are using this language does not make it correct. But, as the Magistrate Judge pointed out, the language has "an established legal basis" in 68 Fed. Reg. 51153–01. *Doc. 29* at 5–6 (citing *Jahn v. Astrue*, CIV 10–0771 RHS, *Doc. 28* at 10 (D.N.M. June 27, 2011). This document, entitled "Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of 'Special Profile' into Regulations," explains that the Commissioner's burden at step five is "limited" because it is simply a shift in the burden of proof. *See* 68 Fed. Reg. 51153–01, 2003 WL 22001943. Whereas the claimant has the burden of providing evidence supporting his RFC throughout the sequential evaluation process, at step five, the Commissioner "must provide evidence that demonstrates that jobs exist in significant numbers in the national economy that [the claimant] can do[.]" *Id.* Thus, while the Commissioner has a burden of produc-

tion of evidence at step five, "the ultimate burden of persuasion to prove disability, however, remains with [the claimant]." *Id.*

■ Plaintiff does not explain why the Magistrate Judge was wrong in relying on 68 Fed. Reg. 51153–01 in reaching her decision. Moreover, while the Tenth Circuit has not addressed the issue, other circuits have explicitly stated that the Commissioner's burden at step five is a limited one. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("We agree in any event with the Commissioner that new regulations abrogate the *Curry v. Apfel* standard of review and clarify that there is only a limited burden shift to the Commissioner at step five.") (citing 20 C.F.R. § 404.1560(c)(2)); *see also Bellew v. Acting Com'r of Soc. Sec.*, 605 Fed.Appx. 917, 930 (11th Cir. 2015) (unpublished) ("The claimant bears the burden of proving that he is disabled and, thus, is responsible for producing evidence to support his claim . . . Nonetheless, the Commissioner has a limited burden at step five to show the existence of a significant number of jobs that the claimant can perform.") (citing 20 C.F.R. § 416.920(A)(4)(v)). The Court therefore agrees with the Magistrate Judge's conclusion that the ALJ's statement of the burden of proof at step five was not incorrect.

Plaintiff also seems to argue that the ALJ and Magistrate Judge's decision to employ only a "limited burden" at step five amounts to shifting the burden of production back to the claimant. *See Doc. 32* at 2. Plaintiff cites nothing in support of this argument other than *Haddock*, and his reliance on that decision is misplaced. There the Tenth Circuit held "that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ

must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Haddock*, 196 F.3d at 1087. That is exactly what the ALJ did in this case. *See AR* at 412. Therefore, "Plaintiff's argument that the ALJ failed to shift the burden to the agency at step five is without merit." *Jones*, 202 F.3d at 282.

### B. Bilateral Handling and Fingering

■ Plaintiff argued before the Magistrate Judge that the jobs identified by the VE do not account for his inability to handle and finger bilaterally while he is standing or walking and using his cane. The Magistrate Judge disagreed, finding that none of the jobs identified *require* bilateral handling and fingering, and to the extent that any handling or fingering is necessary, Plaintiff is able to complete such tasks while seated. *See Doc. 29* at 18 (citing the Dictionary of Occupational Titles ("DOT") descriptions for the three jobs identified). Plaintiff objects to these conclusions.

Relying on SSR 96–9p, Plaintiff argues that "[m]ost unskilled sedentary jobs required good use of both hands and fingers; i.e. bilateral manual dexterity." *Doc. 32* at 3. Yet only one of the three jobs identified by the VE is sedentary. *See AR* at 364. Moreover, SSR 96–9p recognizes that when there is a limitation to an individual's ability to handle and finger bilaterally "it may be useful to consult a vocational resource." *See* 1996 WL 374185 at *8. This is exactly what the ALJ did in this case when she asked the VE to identify jobs within Plaintiff's RFC.

Plaintiff next argues that the Magistrate Judge improperly assumed that the re-

quirements of the identified jobs could be done one-handed or while Plaintiff is seated. But the Magistrate Judge did not make this assumption, the VE did when she identified the three jobs at issue. This Court agrees with the Magistrate Judge's assessment that the VE was aware of all of Plaintiff's limitations when she testified that he could complete the requirements of these jobs. As the Magistrate Judge noted, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p, 2000 WL 1898704 at *3. Thus, the VE's testimony that Plaintiff can perform these jobs despite his limitations constitutes substantial evidence supporting the Commissioner's decision to deny benefits. *See Doc. 29* at 19 (citing *Segovia v. Astrue*, 226 Fed.Appx. 801, 804 (10th Cir. 2007) (unpublished); *Tollett v. Barnhart*, 60 Fed. Appx. 263 (10th Cir. 2003) (unpublished); *Newburn v. Barnhart*, 62 Fed.Appx. 300 (10th Cir. 2003) (unpublished); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990)).

### IV. Conclusion

The ALJ applied the correct burden of proof at step five of the sequential evaluation process, and the VE's testimony is substantial evidence in support of the ALJ's finding that Plaintiff maintains the ability to work despite his RFC.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's objections are overruled, the Court adopts the Chief Magistrate Judge's rec-

ommendations and denies Plaintiff's Motion to Reverse or Remand *(Doc. 21)*. The Court will enter a final order pursuant to Rule 58 of the Federal Rules of Civil Procedure affirming the decision of the Acting Commissioner.

Karen B. Molzen, UNITED STATES CHIEF MAGISTRATE JUDGE

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Plaintiff's Motion to Remand or Reverse *(Docs. 21 )*, filed August 9, 2016. Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 16*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court recommends that Plaintiff's Motion be denied.

### I. Procedural History

This is Plaintiff's second appeal. Plaintiff initially filed applications with the Social Security Administration for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on December 4, 2009. *AR* at 153, 160.[1] Plaintiff alleged a disability onset date of May 29, 2009, due to bulging and ruptured discs, disc degeneration, and depression. *AR* at 196. These applications were denied initially and upon reconsideration. *AR* at 76–79. Plaintiff requested review and, after holding a *de novo* hearing, Administrative Law Judge

("ALJ") Michelle K. Lindsay issued an unfavorable decision on January 23, 2012. *AR* at 18–28. Plaintiff requested that the Appeals Council review ALJ Lindsay's decision on January 30, 2012. *AR* at 12. The Appeals Council denied Plaintiff's request for review of ALJ Lindsay's decision on July 5, 2013. *AR* at 1–3. As such, ALJ Lindsay's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff appealed ALJ Lindsay's decision to this Court. *AR* at 440–42. The Honorable William P. Lynch issued a decision reversing ALJ Lindsay's decision on February 6, 2014. *AR* at 444–64. Thereafter, the Appeals Council vacated ALJ Lindsay's decision on November 18, 2014. *AR* at 467–68. The Appeals Council noted that Plaintiff filed subsequent claims for DIWC and SSID on July 24, 2013; accordingly, these claims were consolidated with Plaintiff's pending claims. *AR* at 467.

On August 5, 2015, ALJ Deborah L. Rose held a second *de novo* hearing. *AR* at 374. After this hearing, ALJ Rose issued an unfavorable decision on November 18, 2015. *AR* at 345–65. The Appeals Council did not assume jurisdiction over the case, and so ALJ Rose's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.984, 416.1484. This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expect-

---

1. Documents 10–1 through 10–25 comprise the sealed Administrative Record (*"AR"*). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

ed to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 347. At Step Two, she determined that Plaintiff had the severe impairment of "degenerative disc disease of the lumbar spine." *AR* at 347–351. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 351–354.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In this case the ALJ determined that Plaintiff retained the RFC to

> Perform less than the full range of light, and sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) and 20 CFR 404.1567(a) and 416.967(a) with limitations as follows. The claimant is able to lift or carry up to ten pounds frequently and up to twenty pounds occasionally. He is able to stand or walk two hours per day, and sit for six hours daily. The claimant is only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and he is never able to climb ladders, ropes or scaffolds. The claimant is able to have no more than occasional exposure to extreme cold, vibration, or hazards, such as dangerous moving machinery or unprotected heights. He must use a cane for all his standing and walking. The claimant would need to alternate between sitting and standing as needed, about every ten to thirty minutes.

*AR* at 354. Employing this RFC at Steps Four and Five, the ALJ determined that Plaintiff was unable to perform his past relevant work. *AR* at 362. However, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform; specifically, the ALJ determined that Plaintiff maintains the RFC to work as a mail sorter, Dictionary of Occupational Titles ("DOT") No. 209.687.026, office helper, DOT No. 239.567–010, or order clerk, DOT No. 209.567–014. *AR* at 364. Accordingly, the ALJ determined that Plaintiff was not disabled from his alleged onset date through the date of her decision, and denied benefits. *AR* at 365.

## II. Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

## III. Analysis

Plaintiff raises a series of errors, all related to the ALJ's findings at Step Five.

### A) The ALJ did not misstate the burden of proof.

Plaintiff's first argument is that the ALJ misstated the burden of proof at Step Five. In this regard, the ALJ stated:

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. *Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.* In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education and work experience (20 CRF 404.1512(g), 404.1506(c), 416.912(g) and 416.960(c)).

*AR* at 347 (emphasis added). Plaintiff argues that the italicized language is in error, because, he contends, "the *entire* burden of proof shifts to the Commissioner and that 'the claimant has *no* burden at step five.'" *Doc. 22* at 9 (citations omitted).

The Court recognizes that judges in this district have been critical of this language in opinions in which they reversed the denial of benefits. *See Kuykendall v. Colvin*, CIV 13–0877 MV/WPL, *Doc. 27* at 19 (D.N.M. Jan. 26, 2015); *Martin v. Astrue*, CIV 10–0053 ACT, *Doc. 21* at 8 (D.N.M. Jan. 1, 2011); *Rivera v. Astrue*, CIV 10–0305 WDS, *Doc. 25* at 8 (D.N.M. Dec. 29, 2010); *Dominguez v. Astrue*, CIV 09–1012 ACT, *Doc. 25* at 9 (D.N.M. Sep. 29, 2010); *Thompson v. Astrue*, CIV 09–0063, RB/ACT, *Doc. 22* at 4 (D.N.M. Feb. 22, 2010). This criticism is based on language in an unpublished Tenth Circuit opinion stating that "[t]he claimant has no burden at step five." *Stewart v. Shalala*, 999 F.2d 548 at *1 (10th Cir. 1993) (unpublished table decision). However, none of these cases reversed and remanded an ALJ's decision merely for this statement, but for more substantial errors in the process. And there is no Tenth Circuit case, published or unpublished, that this Court is aware of reversing an ALJ on this ground alone.

Moreover, as the Commissioner points out, the ALJ's language is based on the Administration's interpretation of the sequential evaluation process as stated in 68 Fed. Reg. 51153–01. *Doc. 25* at 12. In this document, titled "Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of 'Special Profile' Into Regulations," the Commissioner states:

Although you generally bear the burden of proving disability throughout the sequential evaluation process, there is a limited shift in the burden of proof to us "only if the sequential evaluation process proceeds to the fifth step." *Bowen v. Yuckert*, [482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)]. ... When we decide that you are not disabled at step 5, this means that we have determined that there is other work you can do. To make this finding, we must provide evidence that demonstrates that

jobs exist in significant numbers in the national economy that you can do, given your RFC, age, education, and work experience. In legal terms, this is a burden of production of evidence.

This burden shifts to us because, once you establish that you are unable to do any past relevant work, it would be unreasonable to require you to produce vocational evidence showing that there are no jobs in the national economy that you can perform, given your RFC. However, as stated by the Supreme Court, "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert, id.* Thus, the only burden shift that occurs at step 5 is that we are required to prove that there is other work that you can do, given your RFC, age, education, and work experience. That shift does not place on us the burden of proving RFC.

Thus, we have a burden of proof even though our primary interest in the outcome of the claim is that it be decided correctly. As required by the Act, the ultimate burden of persuasion to prove disability, however, remains with you.

68 Fed. Reg. 51153–01, 2003 WL 22001943.

As stated by another judge in this district when considering this language, "[t]herefore the ALJ's statement has an established legal basis." *Jahn v. Astrue,* CIV 10–0771 RHS, *Doc. 28* at 10 (D.N.M. June 27, 2011). In fact, the regulations reflect the notion that while the Commissioner is responsible for providing evidence that the claimant can still work at Step Five, it remains the claimant's burden to prove the RFC that will be used at that step. As stated in the regulations:

> In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors. We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The Tenth Circuit has also explained that "the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered." *See Howard v. Barnhart,* 379 F.3d 945, 948 (10th Cir. 2004). Therefore, the ALJ did not improperly shift the burden to Plaintiff at Step Five, and her statement that Plaintiff was still responsible for proving her disability at that step was not incorrect. *See Bustos v. Astrue,* CIV 10–0990 LAM, *Doc. 19* at 15–16 (D.N.M. Sept. 30, 2011). The Court will not reverse the ALJ on this ground.

### B) *The ALJ's hypothetical corresponds with Plaintiff's RFC.*

█ Plaintiff next argues that the "the hypothetical given to the VE [ (Vocational Expert) ] and the answers given do not match the RFC established by the ALJ with precision." *Doc. 22* at 10 (capitalization omitted). The Court disagrees.

█ "Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy." *Hargis v. Sullivan,* 945

F.2d 1482, 1491 (10th Cir. 1991). "[T]he hypothetical questions posed to the VE to assist with the step-five determination must reflect with precision all—and only—the impairments and limitations borne out by the evidentiary record." *Grotendorst v. Astrue*, 370 Fed.Appx. 879, 883 (10th Cir. 2010) (unpublished) (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)). A VE's response to a hypothetical question that meets this standard constitutes substantial evidence for an ALJ's disability decision. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

In this case the ALJ determined that Plaintiff maintains the RFC to perform less than the full range of light and sedentary work with the following restrictions:

> The claimant is able to lift or carry up to ten pounds frequently and up to twenty pounds occasionally. He is able to stand or walk two hours per day, and sit for six hours daily. The claimant is only occasionally able to climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and he is never able to climb ladders, ropes or scaffolds. The claimant is able to have no more than occasional exposure to extreme cold, vibration, or hazards, such as dangerous moving machinery or unprotected heights. He must use a cane for all his standing and walking. The claimant would need to alternate between sitting and standing as needed, about every ten to thirty minutes.

*AR* at 354.

When she questioned the VE at the hearing, the ALJ propounded the following hypothetical:

> If this individual could lift or carry up to 10 pounds frequently, up to 20 pounds occasionally; could stand or walk two hours per day; could sit six hours daily; could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; could have no more than occasional exposure to extreme cold, vibration, or hazards such as dangerous moving machinery or unprotected heights; and if he required the use of a cane for all standing and walking.

*AR* at 404. After discussing the ramifications of this hypothetical, the ALJ then asked:

> And if we added to hypothetical number one this individual would need to be able to alternate between sitting and standing as needed, and he testified that that would be every 10 to 30 minutes. Would these jobs allow for that option, to be performed either at the sitting level or the standing level?

*AR* at 409. In response, the VE testified that the hypothetical individual could perform three jobs: office helper, mail sorter, and order clerk, and that the number of these jobs within the economy would be reduced by 30% to accommodate this restriction. *AR* at 410–11.

Thus, "[t]he ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in [her] RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision." *See Qualls*, 206 F.3d at 1373.

Plaintiff argues that "both the VE and the ALJ lose sight of the entire RFC found, and fail to address the effect on the inability to use one hand during the times Plaintiff supports himself with his cane, while they focus just on the sitting and standing requirement." *Doc.* 22 at 11. The

hearing transcript belies this contention. As noted, the ALJ specifically included Plaintiff's need to use a cane in the first hypothetical to the VE. This limitation was not forgotten in the second hypothetical. Rather, the ALJ incorporated by reference those limitations stated in the first hypothetical when she "added" the sit stand option which was ultimately included in Plaintiff's RFC. In sum, the ALJ's hypothetical to the VE reflected the full extent of his limitations; there is no reversible error here.

### C) The VE's testimony was not unacceptably vague or confusing.

■ Plaintiff contends that the VE's testimony was vague and confusing, and for that reason, cannot constitute substantial evidence in support of the ALJ's decision. *Doc. 22* at 11–13. Plaintiff explains that "[o]nly after three opportunities does the VE include the order clerk, and reaches the three jobs eventually found by the ALJ." *Id.* at 13. Plaintiff therefore argues that "the three jobs found by the ALJ are established by this inconsistent testimony." *Id.* at 13. The Court agrees that the ALJ's questioning of the VE could have been clearer. However, the Court disagrees with Plaintiff's position that merely because the VE's testimony was slightly confusing it cannot constitute substantial evidence on which the ALJ could rely.

In setting forth her first hypothetical, the ALJ asked the VE to assume an individual who, among other things, was limited to walking and standing to two hours per day, who could sit for six hours daily, and who required the use of a cane for all standing and walking. *AR* at 404. The VE testified that this hypothetical individual could not complete Plaintiff's past relevant work; however, after some clarification, the VE testified that there are other jobs

that such an individual can perform. *AR* at 404–05. Specifically, the VE testified that the individual in hypothetical number one could perform the occupations of mail sorter, DOT number 209.687–026, office helper, DOT number 239.567–010, order clerk, DOT number 209.567–014, final assembler, DOT number 713.687–018, and charge account clerk, DOT number 205.367–014. *AR* at 406–09.

The ALJ then set forth a second hypothetical with an attendant follow-up question: "And if we added to hypothetical number one this individual would need to be able to alternate between sitting and standing as needed, and he testified that that would be every 10 to 30 minutes. Would these jobs allow for that option, to be performed either at the sitting level or the standing level?" *AR* at 409. The VE responded: "Depending on what the individual is doing for the office helper, that could be a possibility. However, if the individual is working on something that requires more standing or sitting, then that interruption would interfere with the job." *AR* at 409. The VE continued, "[t]he other jobs would not allow it." *AR* at 409. To clarify, the ALJ asked the VE: "So the mail sorter, the order clerk, final assembler, and charge account clerk would not allow this alternating between sitting and standing?" *AR* at 409. The VE responded: "The only one—the only addition would be the mail sorter, but the rest was (sic) not. The other sedentary—the two other sedentary positions." *AR* at 410. The ALJ further inquired: "Okay. So that I'm clear, which jobs can do this?" *AR* at 410. The VE responded that the office helper, the mail sorter and the order clerk positions could tolerate Plaintiff's need to sit or stand at will. *AR* at 410. The VE went on to testify, however, that the need to alternate sitting or standing would reduce the

number of available jobs in these categories by thirty percent. *AR* at 410–11.

While the VE's testimony could have been more clearly expressed, it establishes the following observations: (1) Plaintiff cannot perform his past relevant work; (2) there are a wide variety of jobs available to the first hypothetical individual that the ALJ described; (3) however, only three of these jobs are available to a person with Plaintiff's RFC, which limits him to positions that can accommodate sitting and standing at will; and, (4) the number of available positions in these three jobs would be further reduced by thirty percent due to the requirement of a sit/stand option. Plaintiff does not explain why these conclusions, albeit presented in a somewhat confusing manner, cannot constitute substantial evidence in support of the ALJ's decision. The Court will not reverse the ALJ on this ground.

### D) The ALJ's decision comported with *Haddock* and SSR 00–4P.

Plaintiff maintains that the ALJ's questioning, and the VE's responses, were inconsistent with *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999),[2] and SSR 00–4P. In *Haddock*, the Tenth Circuit held that an "ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091. The Administration responded to *Haddock* by publishing SSR 00–4P, which explains the use of use of vocational expert and vocational specialist evidence, and other

reliable occupational information, in disability decisions. *See* 2000 WL 1898704. Plaintiff argues that the ALJ's questions and the VE's responses ran afoul of these provisions for a number of reasons.

1. The VE's testimony is substantial evidence in support of the thirty-percent reduction in available jobs due to the sit/stand requirement in Plaintiff's RFC.

Plaintiff's first argues that the VE provided an "insufficient description of which jobs are actually identified and whether sufficiently probative for those jobs with the 30% reduction." *Doc. 22* at 15. Plaintiff then cites the portion of the VE's testimony where she states that there would be a thirty-percent reduction in the available jobs that would allow for the "possibility" of sitting and standing at will. *Id.* Plaintiff argues that "the record is unclear as to which jobs she is referring to on the 30% reduction since she testified both ways on the standing and sitting for each of the jobs." *Id.* Plaintiff also contends that "it is unclear as to whether she is saying that the sit/stand allowance was merely 'possible,' or whether she was testifying that it was more likely than not that the sit/stand option would be allowed." *Id.*

The Court finds nothing vague about the VE's testimony on this issue. The VE stated that the three jobs which would possibly accommodate the sit/stand requirement of Plaintiff's RFC would need to be reduced by thirty percent to take into account that accommodation. Contrary to Plaintiff's position, such testimony is precisely the sort of "reasonable" or "valid" explanation that a VE can give when an

---

**2.** While Plaintiff refers to the case as *Haddock v. Astrue*, Doc. 22 at 14, the Commissioner of the Social Security Administration was Ken-

neth Apfel when the *Haddock* decision was published. Accordingly, the case caption is *Haddock v. Apfel*, not *Astrue*.

identified job arguably conflicts with a claimant's RFC. *Haddock*, 196 F.3d at 1091–92 (describing a reasonable explanation as testimony that "a specified number or percentage or a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require."); *see also* SSR 00–4P, 2000 WL 1898704 at *3 ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT."). Accordingly, the Court will not reverse the ALJ on this ground.

### 2. The ALJ properly relied upon the VE's estimate as to the reduction in the available number of jobs.

■ Plaintiff's next objects that the VE's decision to discount the available jobs by thirty percent "appears speculative" for, among other reasons, "the 30% figure was given as one common number for all three identified and different occupations." *Doc. 22* at 15. Thus, Plaintiff argues that the ALJ "failed to include the variety of loss of sitting and standing in the respective jobs." *Id.* at 16 (emphasis in original); *see also id.* at 18 ("The spontaneous 30% opinion, under the facts of this case, would seem to be the antithesis of the specificity required of standard vocational evidence in these cases.").

The number of available jobs in a particular category is not included within the DOT. Nor is there any indication of how a particular claimant's limitations would affect his or her ability to perform a particular type of work, or, as in this case, how a particular limitation might affect the num-

ber of jobs available. This is, at least in part, why the Administration relies on the experience and testimony of vocational experts and vocational specialists when making Step Five findings. *See* SSR 00–4P, 2000 WL 1898704 at *2 ("as provided in 20 CFR 404.1566(e) and 416.966(e), we use VEs and VSs as sources of occupational evidence in certain cases."); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e) (allowing for the use of VEs in disability determinations to determine the transferability of skills in a given occupation or in "similarly complex" issues). For this reason, "[e]vidence from VEs or VSs can include information not listed in the DOT." SSR 00–4P, 2000 WL 1898704 at *2. Rather, "[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling." *Id.*

■ "Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish. The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof." *Rogers v. Astrue*, 312 Fed.Appx. 138, 142 (10th Cir. 2009) (unpublished) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); 20 C.F.R. § 404.1566(e); SSR 00–4P at *2).

In support of his position that the VE's reduction of the number of jobs available to him was speculative, Plaintiff relies upon cases from the Seventh Circuit which are highly critical of VE testimony. *See Doc. 22* at 16–17 (citing and discussing *Herrmann v. Colvin*, 772 F.3d 1110 (7th

Cir. 2014); *Alaura v. Colvin*, 797 F.3d 503 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014); and *Hill v. Colvin*, 807 F.3d 862 (7th Cir. 2015)). The Court has reviewed these cases, but does not find them helpful in resolving this case for two reasons. First, the cases are not binding on this Court. Second, the Tenth Circuit has not demonstrated the hostility towards VE testimony that drove the result in those cases.

In *Herrmann*, for example, the Seventh Circuit rejected the VE's testimony about the number of available jobs because "he didn't explain how impressions from unspecified past experience and 'knowledge' could enable him to determine numbers of particular jobs. Nor did he reveal what surveys he had relied upon and what they had shown." *Herrmann*, 772 F.3d at 1113. Accordingly, the Seventh Circuit reversed and remanded the case because "[n]othing in the record enable[d] [it] to verify those numbers, which the administrative law judge accepted." *Id.* at 1114.

Likewise in *Browning*, the Seventh Circuit expressed doubts about the "source or accuracy of the number of jobs that vocational experts ... claim the plaintiff could perform that exist in the plaintiff's area, the region, or the nation." *Browning*, 766 F.3d at 709. "[M]ost serious" in the Court's opinion, "there are no credible statistics of the number of jobs doable in each job category by claimants like the plaintiff in this case who have 'limitations[.]' " *Id.*

In contrast, the Tenth Circuit has accepted without reservation VE testimony concerning the number, percentage and location of jobs within a claimant's capacity. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1331 (10th Cir. 1992).

In *Alaura*, the Seventh Circuit felt the need to "say something about the vocation-al expert's conclusion" based on its "concern with the source and validity of the statistics that vocational experts trot out in social security disability hearings[.]" *Alaura*, 797 F.3d at 507–08. The Court opined that the only reliable statistics for job numbers "are census data for broad categories of jobs, rather than for jobs in the narrower categories that the applicant for benefits is capable of doing." *Id.* at 508. The court therefore opined that "[a] vocational expert's stated number of jobs in a narrow category seems likely ... to be a fabrication." *Id.* Finally, in a concurrence in *Hill*, Judge Posner rejected the VE's testimony that based on his "own experience" the claimant could perform jobs with only one functioning limb because "he failed to describe the experience that formed his opinion[.]" *Hill*, 807 F.3d at 871. "In short," Judge Posner opined that "the vocational expert's testimony was worthless[.]" *Id.* at 872.

In contrast, the Tenth Circuit in *Trimiar* credited VE testimony concerning the ability of a claimant to work and travel long distances to assigned work, notwithstanding the limited function of the claimant's right hand. *Trimiar*, 966 F.2d at 1330–31. This included crediting testimony that indirectly established that persons with the claimant's impairments could perform the jobs identified by the VE. *See id.* at n.20. More recently, in *Rogers*, 312 Fed. Appx. at 142, the Tenth Circuit affirmed a Step–Five finding as to the availability and number of jobs which relied upon a VE's "professional placement experience." *Id.*; *see also Holcom v. Barnhart*, 79 Fed. Appx. 397, 399 (10th Cir. 2003) (unpublished) (accepting the testimony of a VE that the claimant could perform certain jobs "based on her thirty years of experience in observing [ ] jobs and placing people in these and other occupations").

In sum, while the Court takes note of the lack of confidence expressed by the Seventh Circuit towards VEs and the testimony they offer, Plaintiff has cited nothing indicating that the Tenth Circuit harbors these same reservations. To the contrary, the Tenth Circuit is incredibly deferential towards VE testimony so long as the ALJ complies with the mandates of *Haddock* and SSR 00-4p. "Indeed, what would be the point of vocational testimony (or expert testimony in general) if it could not reach beyond matters already established through administrative (or judicial) notice?" *Gay*, 986 F.2d at 1340. The Court therefore rejects Plaintiff's argument that the VE's testimony concerning the thirty-percent reduction cannot constitute substantial evidence in support of the ALJ's decision.

### 3. There is no conflict with the DOT.

Plaintiff argues that "the VE's job identification fails to match the requirement of 'frequent' handling and fingering in each of the three jobs" that the VE testified Plaintiff can perform. *Doc. 22* at 19. Plaintiff argues that his RFC is inconsistent with jobs requiring frequent bilateral handling and fingering because it contemplates the use of a cane for all standing and walking, as well as the need to sit and stand at will. *Id.*

Plaintiff's argument is based on the Selected Characteristics of Occupations ("SCO"),[3] which is the companion to the DOT. However, Plaintiff has not provided a citation to the SCO, and the Court was unable to locate "the tables" that Plaintiff relies on in his brief. The DOT entries for the jobs at issue confirm that handling and fingering are "frequent" activities of these jobs. *See* DOT No. 209.687-026, 1991 WL 671813; DOT No. 239.567-010, 1991 WL 672232; DOT No. 209.567-014, 1991 WL 671794. However, contrary to Plaintiff's assertion that "frequent" is defined as two-thirds of the day, the DOT defines "frequently" as 1/3 to 2/3 of the time. *See, e.g.*, DOT No. 209.687-026, 1991 WL 671813. Moreover, none of these positions explicitly require handling and fingering *bilaterally*.

Plaintiff contends that "[w]hile standing he would not be able to handle and finger while holding and supporting himself with a cane." *Doc. 22* at 19. However, Plaintiff does not explain why this is the case. True, it would be difficult for Plaintiff to bilaterally handle or finger anything when walking or standing and using his cane, but none of the jobs identified by the VE *require* bilateral handling and fingering, and many of the requirements of those jobs can be done one-handed, or during the time that Plaintiff is seated. *See* DOT No. 209.687.026,[4] DOT No. 239.567-010,[5]

---

**3.** The SCO is incorrectly identified by Plaintiff as the "Specific Characteristics of Occupations." *Doc. 22* at 19.

**4.** According to the DOT, a Mail Sorter: "Sorts incoming mail for distribution and dispatches outgoing mail: Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert in envelopes [FOLDING–MACHINE OPERATOR (clerical) 208.685–014]. May distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine [ADDRESSING–MACHINE OPERATOR (clerical) 208.582–010]. May be designated according to type of mail handled

DOT No. 209.567–014.[6]

Moreover, the VE was aware of all of Plaintiff's limitations when she testified that he could complete the requirements of these jobs. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4P, 2000 WL 1898704 at *3. Here, the VE testified that Plaintiff can perform the identified jobs, despite his limitations. The VE's testimony that Plaintiff can perform the identified jobs constitutes substantial evidence supporting the Commissioner's decision to deny benefits. *See Segovia v. Astrue*, 226 Fed.Appx. 801, 804 (10th Cir. 2007) (unpublished) ("The VE was aware of Mr. Segovia's limitations on overhead reaching, and he testified both that she could perform the jobs he identified and that his opinion of the jobs open to her was consistent with the DOT's spec-

ifications. ... In these circumstances, the VE's testimony does not conflict with the DOT and SCO so much as it clarifies how their broad categorizations apply to this specific case."); *see also Tollett v. Barnhart*, 60 Fed.Appx. 263 (10th Cir. 2003) (unpublished) ("The vocational expert did not suggest that exhaust fumes would preclude Tollett from performing as a gate guard. To the contrary, she included the gate guard job as one that could be performed by someone who needed 'to avoid exposure to chemical fumes, perfumes, and other such types of pulmonary irritants.' Therefore, the vocational expert's testimony provided a proper basis for the ALJ's disability decision."); *Newburn v. Barnhart*, 62 Fed.Appx. 300 (10th Cir. 2003) (unpublished) ("[t]he ALJ directly addressed the issue of whether the designated jobs could be performed with the specified limitation on hours of standing or walking. In response to the ALJ's questions, the vocational expert answered that 'those jobs would accommodate the inability to stand more than four hours.'" Thus, "[t]he Commissioner met her step-five bur-

---

as Mail Clerk, Bills (clerical)." 1991 WL 671813.

**5.** According to the DOT, an Office Helper: "Performs any combination of following duties in business office of commercial or industrial establishment: Furnishes workers with clerical supplies. Opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. Delivers oral or written messages. Collects and distributes paperwork, such as records or timecards, from one department to another. Marks, tabulates, and files articles and records. May use office equipment, such as envelope-sealing machine, letter opener, record shaver, stamping machine, and transcribing machine. May deliver items to other business establishments [DELIVERER, OUTSIDE (clerical) 230.663–010]. May specialize in delivering mail, messages, documents, and packages between departments of establishment and be designated Messenger, Office (clerical). May deliver stock

certificates and bonds within and between stock brokerage offices and be designated Runner (financial)." 1991 WL 672232.

**6.** According to the DOT, an Order Clerk: "Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone–Order Clerk, Drive–In (hotel & rest.); Telephone–Order Clerk, Room Service (hotel & rest.)." 1991 WL 671794.

den of proving that there are sufficient jobs in the national economy for a hypothetical person with the claimant's impairments."); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) ("The ALJ properly relied on the testimony of a vocational expert that plaintiff had the residual functional capacity for a limited range of light work and there were jobs he could perform. This testimony is substantial evidence supporting the ALJ's conclusion that plaintiff was not disabled.").

### 4. The VE and ALJ reasonably relied upon the DOT.

 Plaintiff's final argument appears to attack the VE and ALJ's reliance on the DOT itself. In support of this argument, Plaintiff again relies on authority from the Seventh Circuit. *See Doc. 22* at 20. Specifically, Plaintiff cites to *Dimmett v. Colvin*, 816 F.3d 486 (7th Cir. 2016). In *Dimmett*, Judge Posner expressed dissatisfaction with the VE and ALJ's reliance on the "obsole[te]" DOT, opining that perhaps the Commissioner ought to rely on the more up to date O*NET for job descriptions. *See id.* at 489. However, as Judge Posner observed, the Administration has not endorsed the O*NET "and in fact is developing its own parallel classification system." *Id.* While this system "is not expected to be rolled out for at least three more years," Plaintiff has cited to nothing indicating that the VE's reliance on the DOT is impermissible in the Tenth Circuit. To the contrary, the regulations explicitly list the DOT as an example of a publication from which the administration will take administrative notice of job data. *See* People v. Dockery, 95 N.Y.2d 934, 721 N.Y.S.2d 610, 744 N.E.2d 146, 2000 WL 1897804 at *2 (2000); *see also* 20 C.F.R. §§ 404.1566(d), 416.966(d); *see also Gibbons v. Barnhart*, 85 Fed.Appx. 88, 93

(10th Cir. 2003) (unpublished) ("Once the VE stated that [s]he was relying on the DOT, the ALJ had no further duty to investigate.").

### IV. Conclusion

Plaintiff fails to demonstrate that the ALJ committed reversible error in this case.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand (*Doc. 22* ) be **denied**.